United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 15, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————

No. 04-20201

———————

BRAZOS VALLEY COALITION FOR
LIFE INC., a Texas not-for-profit
corporation; DONALD PARSONS;
ISMAEL ESCOBAR; JANICE EOFF;
RENEE LINDER; ROSALINDA MALDONADO;
JIM DONAHUE,

                                        Plaintiffs-Appellants,


        versus


THE CITY OF BRYAN TEXAS, a public
body municipal corporation of the
State of Texas,

                                        Defendant-Appellee.



———————

Appeals from the United States District Court
for the Southern District of Texas

———————


Before GARWOOD, GARZA, and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

     Appellants Brazos Valley Coalition for Life, Incorporated,
Donald Parsons, Janice Eoff, Jim Donahue, Ismael Escobar, Renee
Linder, and Rosalinda Maldonado brought suit against appellee City
of Bryan, Texas seeking preliminary and permanent injunctive

relief, a declaratory judgment, and damages on their allegations that the City's Sign Code is, *inter alia*, unconstitutional under the First Amendment. The district court granted summary judgment to the City and we affirm.

**Facts and Proceedings Below**

Brazos Valley Coalition for Life, Incorporated (Coalition for Life) is a Texas not-for-profit corporation formed in 1998 that is dedicated to advancing its members' belief that life is sacred from conception forward. The individual appellants also share this belief. They express their conviction that abortion is murder by participating in organized protests at Planned Parenthood in Bryan, Texas where abortions are regularly performed. These protests have in the past consisted of, among other things, picketing with handheld signs and placing signs and flags in the "grassy strip" between the street and the sidewalk in front of Planned Parenthood.

The City has a comprehensive Sign Code to regulate where and how signs are displayed in Bryan, including public rights-of-way. The first version of the Sign Code relevant to this case is Ordinance 999, which was enacted on May 1, 1996. Among its many rules, Ordinance 999 declared it "unlawful for any person to erect, place, or maintain a sign in the City of Bryan" within a public right-of-way. Ordinance 999 § 22-3 & 4. A sign is defined as:

2

> "any device, structure, fixture, or placard
> using graphics, symbols, and/or written copy
> designed specifically for the purpose of
> advertising or identifying any person,
> persons, political party, event,
> establishment, product, goods, or services."[1]

Though contentious discussions with the City over the scope of protests at Planned Parenthood began at least as early as 2000, it is enough for our purposes to begin with July 2002 when City police officers told protesters that they could not place signs in the public right-of-way.[2]  The City, in correspondence

---

[1] Ordinance 999 defines public right-of-way as "that land dedicated for public use commonly as a street, roadway, alley, bridge, or thoroughfare, and most often extends the entire width between property lines of any roadway, street, alley, bridge, or other similar thoroughfare, not privately owned or controlled, when any part thereof is open to the public for vehicular traffic, is the responsibility of the City or other similar public agency to maintain, and over which the City has legislative jurisdiction under its police power."  *Id.* at § 22-2.

Similarly, Ordinance 1443, the final version of the relevant City ordinance in effect when the City's motion for summary judgment was filed, provides that "Public right of way shall mean the entire width of the area between private property lines, dedicated for public use as a street, roadway, alley, bridge, thoroughfare, improved or unimproved pedestrian way or sidewalk." *Id*. at § 24-56.  We reject appellant's unsupported argument that the "grassy strip" is (or was) not part of the public right-of-way.

[2] Appellant Escobar, for example, states in his affidavit that he was told on July 16, 2002, by a City police officer that he could not allow his sign to touch the ground.  Appellant Parsons states in his affidavit that he was forbidden on September 3, 2002, from hammering a sign with the words "Vote Pro-Life" into the grassy strip.  All of the individual appellants have a similar story. Appellant Eoff claims in her affidavit that on October 2, 2002, she was told by Sergeant

3

between it and certain appellants in August 2002, took the position that the Sign Code forbade any sign that touched the ground, even a sign that was resting on the ground but being propped up by a protestor.[3] This position eventually was that even resting a handheld sign on the ground was prohibited. Despite several police visits to Planned Parenthood no citations were ever issued, no one was ever arrested, there is no allegation of police use or threatened use of force, and the only signs the police ever took were those lying on the ground unclaimed and thus deemed abandoned.

Unable to reach a compromise with the City, appellants filed their original nine-count complaint on November 21, 2002, in which they alleged violations of (1) First Amendment rights of

---

Gideon of the Bryan city police that she could not allow her handheld sign to touch the ground. Eoff states that she was instructed to rest the shaft of the sign on her foot.

[3] It is clear from the record that the City has never taken the position, formally or informally, that the Sign Code applied to hand held placards or the like which do not touch the ground (whether or not they contain verbal messages), and never sought to enforce any such a construction of the Sign Code. "Hand held signs" have always been specifically exempted from the sign ordinance's permit requirements, and in Ordinance 1428 (adopted in August 2003) and Ordinance 1443 (adopted in October 2003 before filing of the City's motion for summary judgment) such signs are defined as those personally held so that neither the sign nor an object supporting it touches the ground. And, in Ordinance 1443 it is expressly provided that "nothing . . . shall prohibit the display of hand held signs . . . when carried by persons lawfully present on the unimproved portions of the public right-of-way, public property, and on sidewalks." *Id*. at § 24-60(E).

4

speech and assembly; (2) First Amendment right of free exercise of religion; (3) Fifth and Fourteenth Amendment rights of due process; (4) Fourteenth Amendment right of equal protection of the law; (5) the right under the Texas constitution to equality; (6) the right under the Texas constitution to freedom of worship; (7) the right under the Texas constitution to freedom of speech; (8) the Texas Religious Freedom Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 100.001-012; and (9) the City's duty to supervise its employees non-negligently. Appellants sought preliminary and permanent injunctive relief, declaratory judgment, and damages.

As the lawsuit proceeded, appellants and the City continued to discuss how to remedy the asserted defects in the Sign Code. Appellants did not dispute that the City could constitutionally ban the placement of signs in the public right-of-way. Rather, they contended that exceptions to the Sign Code's prohibition on certain kinds of signs constituted impermissible viewpoint discrimination, thus rendering the Sign Code unconstitutional as a whole.

On August 12, 2003, the Bryan City Council gave a first reading to Ordinance 1428 which, among other changes, would revise the Sign Code such that the placement of all signs (other than hand held signs) in the public right-of-way, regardless of their content, would be prohibited. *See* Ordinance 1428 § 22-4(8). This proposal, however, apparently caused some

consternation in the community because on its face it banned placing even an American flag in the public right-of-way and, were it to be enacted, would render unlawful a traditional Labor Day fundraiser by local boy scouts in which they put up an American flag in the public right-of-way in front of a donor's property.[4]

The City Council unanimously passed Ordinance 1428 on August 30, 2003, but at the same time also passed Ordinance 1431. This second ordinance preserved 1428's prohibition on signs (other than hand held) in the right-of-way, but carved out an exception for "flags":

> "The owner of property abutting a public right-of-way may place or consent to the placement of not more than one flag, attached to a single free-standing pole, in the public right-of-way for each 10 linear feet of frontage if placed and maintained in a manner that does not endanger public safety."

---

[4] Appellant Parsons, in an apparent effort to get the City to enact an unconstitutionally viewpoint-specific ordinance that he and others could challenge in court, tried to increase pressure on the City by writing letters to the City and to the local newspaper under assumed names in which he demanded special exceptions in the ordinance for the American flag.

Parsons took his pseudonymous correspondence to a new level when he wrote a letter to the City Manager using the email julieq@cityattorney.com. In this letter, which is signed "Julie," Parsons expresses disrespect for the American flag and unabashed support for Planned Parenthood. He also refers in the letter to a person named Michael. It appears obvious that Parsons was impersonating Assistant City Attorney Julie Gannaway, with whom Parsons had spoken and corresponded, and the Michael in the email plainly refers to City Attorney Michael Cosentino. When confronted with this email in his deposition, Parsons denied (without explanation), that he intended this letter to be understood as a letter from Gannaway.

Ordinance 1431 § 22-4(8)(a).  Ordinance 1431 also included the following definition of "flag": "[a] piece of fabric that contains colors, patterns, symbols, or words that convey a non-commercial message."  *Id.* at § 22-2.  By enacting Ordinances 1428 and 1431 simultaneously, the City hoped it had satisfactorily balanced its constitutional obligation to preserve content neutrality with the public's desire to be able to freely display the American flag over Labor Day in the public rights-of-way.

Appellants, however, were not satisfied.  On September 18, 2003, they filed an amended complaint which, in addition to restating the causes of action in the original complaint *verbatim*, recited in its statement of facts that Ordinances 1428 and 1431 allow a property owner to decide whether a flag will be permitted in the public right-of-way abutting his or her property.  The amended complaint also stated that the City implicitly retained the authority under the Sign Code to determine at its own discretion whether a flag is "commercial" and therefore prohibited.

On October 14, 2003, appellants filed a motion for summary judgment on all claims.  However, before the district court ruled on this motion, the City comprehensively revised its Sign Code on October 30, 2003, by enacting Ordinance 1443.  Whereas the public right-of-way had only been a peripheral detail in the preceding version of the Sign Code, Ordinance 1443 dedicated several pages

7

solely to that matter. Ordinance 1443 preserved the general ban on placing signs (other than hand held signs; see note 3, *supra*) in the public right-of-way, but excepted therefrom government signs, temporary safety signs, and:

> "One (1) flag attached to a single free-standing pole, may be placed in the unimproved portion [i.e. "grassy strip"] of the public right of way for every 10 linear feet of frontage, if placed by the owner of the property abutting the public right of way or with the consent of said owner."

Ordinance 1443 § 24-60(B)(1)-(3). The definition of flag also remained the same.

Ordinance 1443 also introduced a detailed procedure for determining whether a flag placed in the public right-of-way pursuant to section 24-60(B)(3) is commercial or non-commercial. Under Ordinance 1443, a flag is presumptively non-commercial and the burden, both in terms of proof and expense, is entirely on the City to establish otherwise. *See generally id.* at § 22-62.[5]

On November 10, 2003, the City filed its own motion for summary judgment, arguing, *inter alia*, that Ordinance 1443 mooted appellants' prospective claims. The City also sought, and in December 2003 was granted, a protective order barring further

---

[5] Ordinance 1443 repeals all conflicting provisions of prior ordinances. All of the ordinances in question provide that violations are misdemeanors, the penalty on conviction being a fine (not to exceed $500) only. All the ordinances also contain (or amend other provisions of ordinances which contain) full severability clauses.

discovery.  Following a hearing on the cross-motions for summary judgment, the district court, on January 30, 2004, granted summary judgment to the City.  The district court also eventually awarded costs in the amount of $5,600.40, but denied attorney's fees.

Appellants appeal both the judgment, the discovery ruling, and the award of costs.

## Discussion

### 1.    Summary Judgment

#### a.    Standard of Review

A grant of summary judgment is reviewed *de novo* under the same standard applied by the district court.  *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

#### b.    Damages

Though it did not specifically address the issue of damages in its summary judgment order, the district court implicitly found appellants' claims for damages to be without merit.  We concur.  As noted above, the record contains no evidence that any of appellants (or their members) were ever cited, arrested, or subjected to actual or threatened physical force.  To the extent that appellants pleaded damages on account of sign confiscation, there is no summary judgment evidence of any confiscation.[6]

---

[6]    The summary judgment evidence establishes that only abandoned signs laying on the ground in the "grassy strip" were collected by the police and that the police took these abandoned

9

### c. Prospective Claims

We confine our consideration to those specific challenges to the Sign Code which appellants raise in the argument section of their brief. FED. R. APP. P. 28(a)(9)(A) (stating that the argument section of the brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."). Broadly speaking, appellants contend that the Sign Code is unconstitutional for three distinct reasons: (1) the process for issuing permits is inadequate; (2) the distinction between on- and off-premises signs warrants strict scrutiny; and (3) it is impermissible to allow abutting private property owners to disallow a flag in the public right-of-way on the basis of the flag's content.

### i. Mootness

The district court denied summary judgment to appellants and granted the same to the City largely on the ground that Ordinance 1443, which was enacted about two weeks after appellants filed their motion for summary judgment (but before the City filed its summary judgment motion), mooted appellants' prospective claims

---

signs only after asking those in the vicinity whether they belonged to anyone and receiving negative responses.

Furthermore, quite apart from the lack of evidence on this score, appellants, although they argue damage claims could not be mooted, did not preserve their damages claims on appeal because they failed to argue that the summary judgment record contains evidence which would support an award of damages.

because they were based on Ordinances 999, 1428, and 1431. Appellants, citing *City of Mesquite v. Alladin's Castle, Inc.*, 102 S. Ct. 1070 (1982), contend that their prospective claims were not mooted by Ordinance 1443 because there is no reason to believe that the City will not reenact the offending ordinances once this litigation is concluded. Appellants do not contend that their claims are not mooted because Ordinance 1443 is itself unconstitutional, just that the City cannot be trusted not to repeal Ordinance 1443.[7]

We disagree. *Mesquite* is distinguishable on its facts. In *Mesquite*, the challenged ordinance was repealed while the case was pending on appeal *after* an adverse final judgment had been entered by the district court and mootness was raised for the first time before the Supreme Court. *Id.* at 1074. Indeed, the City of Mesquite openly conceded at oral argument that it intended to reenact the disputed ordinance as soon as the Supreme

---

[7] Appellants do not challenge 1443 in their main brief, doing so instead only in their reply brief. It is well settled in this circuit, however, that the court does not consider issues raised for the first time in the reply brief. *Price v. Roark*, 256 F.3d 364, 369 n. 2 (5th Cir. 2001). Even if this were not the case, appellants' memorandum in response to the City's motion for summary judgment *did not*, other than scattered conclusory statements, actually argue that Ordinance 1443 is unconstitutional in its own right. As such, appellants have not preserved the issue of the constitutionality of Ordinance 1443 in any sense. Therefore, where Ordinance 1443 has mooted a claim, we will not independently consider whether Ordinance 1443 is constitutional in that context because appellants themselves do not make such arguments in their main brief.

Court vacated the judgment for mootness. *Id.* at 1075 n. 11. In this case, on the other hand, the City of Bryan enacted Ordinance 1443 *prior to* the underlying district court judgment and the City sought summary judgment on the basis, *inter alia*, of that ordinance.[8] Furthermore, there is nothing whatever to suggest that the City intends to repeal Ordinance 1443 when this case is over. Therefore, to the extent that Ordinance 1443 addresses and resolves a claim directed at prior versions of the Sign Code, such claim is moot. *See, e.g., Diffenderfer v. Cent. Baptist Church, Inc.*, 92 S. Ct. 574, 576 (1972) (stating that review is of the current version of a challenged law, not its repealed predecessor); *Lewis v. Cont'l Bank Corp.*, 110 S. Ct. 1249, 1253-55 (1990) (an ostensibly mooted case will go forward only if, *inter alia*, "there was a reasonable expectation that the same complaining party would be subjected to the same action again.") (internal quotation marks and citation omitted).

### ii.  The Permit Process

---

[8] The fact that a statute is repealed after judgment is entered does not necessarily affect the mootness of injunctive or declaratory relief granted by the judgment. In certain instances, however, a repeal following judgment may entitle the plaintiff to remand for consideration of whether the newly enacted law poses problems that were never considered in the trial court. *Lewis*, 110 S. Ct. at 1256 (citing *Defenderfer*, 94 S. Ct. at 576). This concern is not present in the instant case because appellants had an opportunity to challenge Ordinance 1443 in their memorandum in opposition to the City's motion for summary judgment but did not do so, thereby abandoning any such argument.

Before we reach the substance of appellants' challenge to the Sign Code's permit process, we note that the summary judgment evidence on this issue indicates that on July 25, 2002, the Coalition for Life applied for a sign permit under the Ordinance 999 version of the Sign Code to assemble a 37 square foot sign in the public right-of-way in front of Planned Parenthood.  The City's Building Official denied the application on the ground that the sign was a prohibited "portable sign" under Ordinance 999 § 22-4(7).  Nowhere in their brief do appellants argue that this denial violated their rights under the First Amendment.[9] Nor do they argue that the Sign Code is likely to be unconstitutionally applied to them.  Thus we can only conclude that appellants' challenge to the Sign Code's permit requirement is wholly facial.

An ordinance may be facially unconstitutional in either of two respects: "either...it is unconstitutional in every conceivable application, or...it seeks to prohibit such a broad range of protected conduct that it is constitutionally 'overbroad.'"  *Members of City Council v. Taxpayers for Vincent*, 104 S. Ct. 2118, 2124 (1984).  Appellants do not distinguish

---

[9] On page 38 of their brief, appellants state in a purely conclusory, and at bottom incoherent, way that the permit requirement unconstitutionally *delays* free speech by citing the fact that their permit application was *denied*.  This sort of conclusory statement does not constitute a cognizable legal argument.

between these types of facial challenges, but they appear to contend, at least implicitly, that the permit requirement of the Sign Code is unconstitutional *in toto* because it makes content-based distinctions in exempting certain categories of signs from the general permit requirement.

Appellants cite, among others, *Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998), and *Metromedia, Inc. et al. v. City of San Diego, et al.*, 101 S. Ct. 2882 (1981), for the apparent proposition that content-based distinctions in a sign ordinance are categorically fatal to the whole. Both of these cases are inapposite, however, because they involved outright prohibitions on signs with certain content. Here, on the other hand, the exceptions appellants challenge are not to a blanket prohibition on expressing certain ideas, but simply exceptions to the Sign Code's general permit requirement. Nothing in any version of the City's Sign Code, much less Ordinance 1443, purports to foreclose the expression of any particular idea.

In any case, Ordinance 1443 essentially mooted all of appellants' specific challenges to the prior version of the Sign Code's permit requirement and off-premises prohibitions.

Appellants argue that the Sign Code's permit provisions violate the First Amendment by privileging certain topics or viewpoints over others. They point in this respect to two provisions of Ordinance 999. First, they complain of its

14

exception, to the general prohibition of off-premises signs, for signs, approved by the Sign Board, which "promote[s] a positive image of the city of Bryan for the attraction of business or tourism" or "depicts an accomplishment of an individual or group." This provision was eliminated in Ordinance 1443. Second, they complain of Ordinance 999's provision for an exception, to the general permit requirement applicable to on-premises signs, for "political signs" defined as those "used in connection with a local, state, or national election or referendum." *Id*. at § 22-2, 22-6(j). *See also id*. at § 22-12(d) (requiring removal of sign within ten days following election). It is claimed that this narrow definition of "political" excludes from the permit exemption anti-abortion signs not within 10 days of an election or, even during that time, not expressly related to a particular candidate. However, these provisions were eliminated by Ordinance 1443, which exempts from Sign Code permit requirements and regulation all signs on private property which are not "used for advertising" and states that "advertising"

> "Means to attract, or to attempt to attract, the
> attention of any person to any business,
> accommodations, goods, services, property, or
> commercial activity. The following is not advertising
> for the purposes of this chapter: (1) signs protesting
> against any person, business, organization, property or
> commercial activity, and (2) signs promoting or
> denouncing political, ideological, social or religious
> issues or beliefs of any person or group."

All these specific complaints of appellants as to the prior

15

ordinances have been rendered moot by Ordinance 1443 (as has also any complaint that prior ordinances precluded or required a permit for the display of hand held signs in the "grassy strip;" see note 3 *supra*).

To the extent that appellants assert on appeal that Ordinance 1443 is defective in severable respects that are unrelated and do not apply (and have not been applied) to activities in which appellants have alleged below that they engaged in (or desire or desired or plan or planned to engage in), such arguments are not properly before us and appellants lack at least prudential standing to raise them. We detect no overbreadth in Ordinance 1443 which is both real and substantial in relation to the ordinance's plainly legitimate sweep so as to justify a facial challenge. *See Broadrick v. Oklahoma*, 93 S.Ct. 2908, 2918 (1973); *Virginia v. Hicks*, 123 S.Ct. 2191, 2196 (2003); *Granite State Outdoor v. City of Clearwater*, 351 F.3d 1112, 1116-17 (11th Cir. 2003) (party harmed by one section of ordinance but not by another, different section has no standing to raise overbreadth challenge based on alleged invalidity in the latter section); *Gospel Missions v. City of Los Angeles*, 328 F.3d 548, 553-55 (9th Cir. 2003) (". . . the injury Gospel Missions alleges is not traceable to the professional fundraiser provisions . . . Gospel Missions lacks overbreadth standing to challenge the professional fundraiser provisions because these

16

provisions do not apply to Gospel Missions, and it has not indicated its intent to become a professional fundraiser"). Accordingly, we reject such facial challenges to Ordinance 1443.

### iii. Displaying Flags in the Right-of-Way

In an effort to devise an Ordinance that would permit the Boy Scout flag project to go ahead without either generally allowing all signs to be fixed in the right-of-way or discriminating on the basis of the sign's message, the City in late August 2003 enacted Ordinance 1431, which defined "flag" as "a piece of fabric that contains colors, patterns, symbols, or words that convey a non-commercial message," and amended the ordinance section generally prohibiting signs placed in the right-of-way by adding to it the following provision:

> "The owner of property abutting a public right-of-way may place or consent to the placement of not more than one flag, attached to a single free-standing pole, in the public right-of-way for each 10 linear feet of frontage if placed and maintained in a manner that does not endanger public safety."

In the district court appellants objected to this provision on essentially two bases (which appellants also urge on appeal): first, that it did not define "non-commercial" and did not provide adequate procedural due process to preclude the City from removing signs it improperly deemed "commercial;" and, second, that its limitation of permitted flags to those placed or consented to by the adjacent property owner improperly permitted the property owner to make viewpoint specific distinctions that

17

the City itself could not constitutionally make.

In response to these objections, the City, in late October 2003 before the filing of its summary judgment motion, enacted Ordinance 1443 which carried forward the same above quoted definition of "flag" as contained in Ordinance 1431 and (among other things) added the following wholly new provisions concerning the meaning and determination of "commercial" and "non-commercial," viz:

> "COMMERCIAL MESSAGE. A message placed or caused to be placed before the public by a person or business enterprise directly involved in the manufacture or sale of the products, property, accommodations, services, attractions, or activities or possibly those things which are the subject of the message and that:
>
> > (a) refers to the offer for sale or existence for sale of products, property, accommodations, services, attractions, or activities; or
> > (b) attracts attention to a business or to products, property, accommodations, services, attractions, or activities that are offered or exist for sale or for hire.
>
> . . .
>
> NON-COMMERCIAL MESSAGE. Any message that is not a commercial message.
>
> . . .
>
> > (a) Findings. The city council finds that it may be necessary in the enforcement of Section 24-60(B)(3), to determine whether the message displayed upon a flag is a commercial message or a noncommercial message.
> >
> > (b) Hearing. If a person receives a notice of violation or is cited for maintaining an illegal commercial flag in the public-right-

of-way, and the person notifies the city attorney in writing within 10 calendar days of receiving the notice or citation that he believes the flag displays a non-commercial message and is, therefore, not in violation of this chapter, the city attorney shall postpone the prosecution of the case and shall have the matter placed on the agenda of the board of sign control and appeals within 25 calendar days. The board shall determine whether the flag conveys a commercial message. The board shall make a determination no later than the 46th calendar day after the notice of violation or citation was received by the person maintaining the flag. The failure of the board to make a determination within the time required shall result in a deemed finding by the board that the flag is non-commercial.

(c) <u>Judicial Review</u>. If the board determines that the flag conveys a commercial message and is illegally placed in the public right-of-way, the person maintaining the sign may within 10 days of the board's decision file a notice of non-acceptance of the decision with the city attorney. Within twenty (20) business days after receiving the notice of non-acceptance, the city attorney may initiate suit in the district court for determination that the sign is commercial and for an injunction to prohibit display of the sign in violation of this Chapter. The city shall bear the burden of showing that the sign is commercial."[10]

We hold that appellants' first set of objections to the flag provisions – that Ordinance 1431 did not adequately define commercial (or non-commercial) and did not provide adequate procedural due process respecting determinations in that respect

---

[10] Ordinance 1431 contained no definition of "commercial" (or "non-commercial") and no provision relating to how or when a determination in that respect is to be made or become effective.

– is rendered moot by Ordinance 1443.  Moreover, appellants'
brief on appeal does not specifically address those provisions of
Ordinance 1443 or present any intelligible argument that they
themselves are independently improper, and, in any event we hold
that they are not constitutionally deficient.  No permit is
required for a "flag" placed in the right-of-way as provided for
in Ordinance 1443, so there is no prior restraint.  Further, and
in any event, an allegedly commercial flag in the right-of-way
may remain in place until the City procures a court injunction
(on which the City carries the burden of proof that the flag is
commercial).  *See, e.g., Friedman v. Md.*, 85 S.Ct. 734 (1965).
The definition of "non-commercial" is not unduly vague and does
not discriminate against (but rather favors) non-commercial
speech.  *See Metromedia, Inc. v. City of San Diego*, 101 S.Ct.
2882 (1981).  *See also Children of the Rosary v. City of Phoenix*,
154 F.3d 972 (9th Cir. 1998).

Turning to appellants' second set of objections – relating
to the control by adjoining property owners over "flags" placed
in the public right-of-way in front of their property – Ordinance
1443 defines public right-of-way,[11] and provides (largely
similarly to Ordinance 1431), as follows:

---

[11] Ordinance 1443 states: "PUBLIC RIGHT OF WAY shall mean the
entire width of the area between private property lines,
dedicated for public use as a street, roadway, alley, bridge,
thoroughfare, improved or unimproved pedestrian way or sidewalk."

20

"Public Rights-of-Way. With the exception of State Maintained Highways, it shall be unlawful to place a sign in the public right-of-way, except as authorized herein. The following signs may be placed in the public rights-of-way.

1) Government Signs

2) Temporary emergency or safety pedestrian and vehicular warning signs.

3) One (1) flag attached to a single free-standing pole, may be placed in the unimproved portion of the public right of way for every 10 linear feet of frontage, if placed by the owner of the property abutting the public right of way or with the consent of said owner."[12]

Appellants' second challenge to the flag rule, though not moot, fails on its merits. Appellants contend that it is unconstitutional for the City to allow private property owners to make viewpoint-specific distinctions that the City itself could not make.[13] Appellants argue that allowing private property owners to reject a flag emplaced in the unimproved public right-of-way in front of their property on the basis of its content confers an unconstitutional "heckler's veto." While it is true that (at least absent a clear and present danger) the government

_____

[12] Ordinance 1443 likewise provides "[n]othing in this chapter shall prohibit the display of handheld signs, as that term is defined in this chapter, when carried by persons lawfully present on the unimproved portions of the public right-of-way, public property, and on sidewalks." It defines handheld sign as a sign personally held "in such a manner that neither the sign nor any object(s) that provide support of the sign touches the ground."

[13] Appellants frame this as a First Amendment and equal protection challenge.

21

cannot restrict speech out of a concern for the discomfort it might elicit in listeners, *see. e.g., Terminiello v. City of Chicago*, 69 S. Ct. 894, 895-96 (1949), and *Cox v. Louisiana*, 85 S. Ct. 453, 462-63 (1965), the central concern of the "heckler's veto" cases does not arise here. In the aforementioned cases, the purpose of the content-based restriction on speech was to protect listeners from a heterodox message.

In the instant case, on the other hand, the flag rule is plainly not aimed at protecting property owners or the public at large from unpopular speech. Rather, the rule reasonably recognizes that emplacing a flag in the unimproved public right-of-way in front of a person or entity's private property will almost certainly result in the expressive message of the flag being attributed to the property owner instead of the flag's owner. Emplacing a flag in the unimproved public right-of-way in front of another's property is effectively analogous to sending a letter to the newspaper under that person's name. The flag rule requires the consent of the abutting property owner to obviate the obvious problems that would arise if, for example, a political group hammered its flag into the lawn of someone who did not agree with that group's views.[14] Further, an adjoining property owner may withhold consent to a given "flag" for reasons

---

[14] The public right-of-way includes a set-back from the curb even if there is no sidewalk.

22

wholly unrelated to the content or viewpoint expressed by any

"message" on it.  But, if the adjoining owner's decision is based

on his or her disagreement with the message, that does not make

the owner's motive or purpose that of the City.  *See, e.g.,*

*Zelman v. Simmons-Harris*, 122 S.Ct. 2460, 2465-67 (2002).  The

regulation restricts *where any* "flag" may be placed, and the

restriction imposed does not to any extent turn or depend on the

content of what is displayed on the "flag."  It is hence deemed

"content neutral" for purpose of the rule that content neutral

reasonable time, place and manner requirements are valid

notwithstanding that their effect may in certain instances

effectively limit speech.[15]  For such purposes, a regulation is

generally "content neutral" if its restrictions on speech are not

based on disagreement with the message it conveys.  *See Ward v.*

*Rock Against Racism*, 109 S.Ct. 2746, 2754 (1989); *Hill v.*

*Colorado*, 120 S.Ct. 2480, 2491 (2001).[16]  We reject this

---

[15] Appellants do not challenge the *reasonableness* of the "flag" rule or claim that it leaves them without adequate alternatives to express their views. The "flag" rule does not apply to hand held signs.  See note 12, *supra*.

[16] In *Ward* the Court stated:

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. [citation] The government's purpose is the controlling consideration.  A regulation that serves purposes unrelated to the content of expression is deemed

23

challenge to the "flag" rule.

### 2. The Motion to Stay Discovery

#### a. Standard of Review

We review a decision to stay discovery pending resolution of a dispositive motion for an abuse of discretion. *Corwin v. Marney, Orton Inv.*, 843 F.2d 194, 2000 (1988).

#### b. Analysis

On December 2, 2003, the district court granted the City's motion to stay discovery pending resolution of the cross-motions for summary judgment. Appellants contend that the district court abused its discretion because appellants sought discovery related to the City's motion for summary judgment. To sustain this contention, appellants must show why the discovery they obtained between when they filed their initial complaint on November 21, 2002 and when the City's motion to stay was granted over a year later, left them unable to respond meaningfully to the City's motion for summary judgment. Appellants did not, however, explain in their brief or at oral argument, despite specific questions from the panel, what relevant evidence they thought

---

> neutral, even if it has an incidental effect on some speakers or messages but not others. . . . Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Id*. at 2754 (citations and internal quotation marks omitted).

In *Hill* the Court quotes with approval the first sentence in the above quotation from *Ward*. *Hill* at 2491.

further discovery likely would have revealed.

Appellants cannot plausibly argue that they needed additional discovery on their damages claim because their own motion for summary judgment on damages was already pending when the City filed its motion and any information on their damages would necessarily be within their own knowledge. With respect to their prospective claims, the City's motion for summary judgment raised pure questions of law. Appellants do not even attempt to show, nor can we readily imagine, how any additional discovery would have been necessary to answer these purely legal questions. Appellants have failed to establish that the district court abused its discretion.

### 3. Costs

#### a. Standard of Review

"The district court has broad discretion in taxing costs, and we will reverse only upon a clear showing of abuse of discretion." *Migis v. Pearle Vision*, 135 F.3d 1041, 1049 (5th Cir. 1998).

#### b. Analysis

Appellants contend that the district court abused its discretion in awarding costs under 28 U.S.C. § 1924 because the City's motion did not comply with the requirements of the statute and local rules. Our review of the record shows an affidavit from City Attorney Michael J. Cosentino affirming that the City

25

justifiably incurred $5,600.40 in court reporter fees.  Each of the three depositions that this sum represents were incorporated as evidence into either the City's memorandum in opposition to appellants' motion for summary judgment or the City's own motion for summary judgment.  Accordingly, we find no abuse of discretion in the award of costs.

## Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.