# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 25, 2012

No. 11-50441

Lyle W. Cayce
Clerk

DIANA ASGEIRSSON, Alpine Council Member;
ANGIE BERMUDEZ, Alpine Council Member;
JAMES FITZGERALD, Alpine Council Member;
JIM GINNINGS, Wichita Falls Council Member;
VICTOR GONZALEZ, Pflugerville Council Member;
RUSSELL C. JONES, Sugar Land Council Member;
LORNE LIECHTY, Heath Texas Council Member;
MEL LEBLANC, Arlington Texas Council Member;
A.J. MATHIEU, Joshua Texas Council Member;
JOHANNA NELSON, Alpine Texas Council Member;
TODD PEARSON, Mayor of Rockport Texas;
ARTHUR REYNA, Leon Valley Council Member;
CHARLES WHITECOTTON, Alderman, Whiteboro Texas;
HENRY WILSON, Hurst Texas Council Member;
KEVIN WILSON, Bellmead Texas Council Member,

Plaintiffs-Appellants

versus

TEXAS ATTORNEY GENERAL, GREG ABBOTT; STATE OF TEXAS,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas

No. 11-50441

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiffs, who are local government officials, sued seeking a declaration that a provision of the Texas Open Meetings Act ("TOMA") violates the First Amendment. Specifically, they contend that Texas Government Code § 551.144 is a content-based restriction on political speech, is unconstitutionally vague, and is overbroad. They seek declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983, that Section 551.144 may not be enforced.

After a bench trial, the district court held that Section 551.144 is constitutional because it is not vague or overbroad, it does not restrict speech based on its content, it requires disclosure rather than restricts speech, and it satisfies the intermediate-scrutiny standard. *Asgeirsson v. Abbott*, 773 F. Supp. 2d 684 (W.D. Tex. 2011). The court held in the alternative that the statute survives strict scrutiny. Plaintiffs appeal each of those rulings except the ruling that the statute meets intermediate scrutiny; they argue that strict scrutiny applies instead.

I.

TOMA requires the meetings of governmental bodies to be open to the public. It applies to most state and local governing bodies but excludes the Legislature, the Governor, mayors, and other executive policymakers. As part of the mechanism to enforce the open-meetings requirement, Section 551.144 prohibits members of covered governing bodies from knowingly participating in a closed meeting, to organize a closed meeting, or to close a meeting to the public. A violation is a misdemeanor punishable by a fine of $100-500, confinement in jail for one to six months, or both.

Most significant for First Amendment purposes is that TOMA defines a "meeting" as "a deliberation between a quorum of a governmental body . . . dur-

No. 11-50441

ing which public business or public policy over which the governmental body has supervision or control is discussed . . . ." TEX. GOV'T CODE ANN. § 551.001. Incidental discussion of public business at ceremonial events, conventions, or social functions is then carved from the definition. Plaintiffs contend that that definition has the effect of criminalizing political speech based on content. We agree with the district court, however, that TOMA is a content-neutral time, place, or manner restriction, so we affirm.[1]

## II.

Plaintiffs argue that the issue of whether strict scrutiny applies to TOMA was foreclosed by a 2009 Fifth Circuit opinion that concludes that the statute is a content-based restriction on speech and must be subjected to strict scrutiny. In 2006, two members of the Alpine City Council sued, alleging TOMA's unconstitutionality. The district court upheld the statute, but a panel of this court reversed, concluding that strict scrutiny applied. We granted rehearing en banc, vacating the panel opinion, then dismissed the appeal as moot.[2] The district court *a quo* concluded that the panel opinion in *Rangra* is not controlling precedent. Plaintiffs maintain, however, that it is still controlling, because the en banc court never reached the merits. They claim that the grant of rehearing en banc merely stays the mandate.

Fifth Circuit Rule 41.3 states, "Unless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate." Although we need not go beyond that plain

---

[1] Because the issues are questions of law, we review them *de novo. See Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006).

[2] *Rangra v. Brown*, 566 F.3d 515, 526-27 (5th Cir.), *vacated by* 576 F.3d 531 (5th Cir.) (per curiam) (granting rehearing en banc), *appeal dismissed as moot*, 584 F.3d 206 (5th Cir. 2009) (en banc) (per curiam).

No. 11-50441

language, this court has consistently held that vacated opinions are not prece-
dent,[3] and it has done so even where the court granting en banc review later
loses its quorum.[4] Thus, *Rangra* is not binding precedent.

## III.

Plaintiffs claim that Section 551.144 is content-based because it applies
only to speech regarding "public policy over which the governmental body has
supervision or control."[5] A regulation is not content-based, however, merely

---

[3] *See Asociacion Nacional de Pescadores a Pequena Escala o Artesanales v. Dow
Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993) (stating that a particular panel
opinion "was vacated for rehearing *en banc* and then settled [and] [a]ccordingly . . . is not
precedent").

[4] *See Comer v. Murphy Oil USA*, 607 F.3d 1049, 1055 (5th Cir. 2010) (en banc) (per cur-
iam), *petition for writ of mandamus denied sub nom. In re Comer*, 131 S. Ct. 902 (2011); *see
also United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 389 (5th Cir. 2008) (stating that
Fifth Circuit Rule 41.3 operates "automatically [to] vacate[]" panel opinions and render them
non-precedential); *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 864 n.12 (5th Cir.
2004) ("[T]he panel opinion was vacated by the grant of en banc rehearing and is not
precedential.").

[5] The alleged content-based portion of the statute is in the definition of "meeting,"
which Section 551.001 defines as

(A) a deliberation between a quorum of a governmental body, or between a
quorum of a governmental body and another person, during which public busi-
ness or public policy over which the governmental body has supervision or con-
trol is discussed or considered or during which the governmental body takes for-
mal action; or

(B) except as otherwise provided by this subdivision, a gathering:

(i) that is conducted by the governmental body or for which the
governmental body is responsible;

(ii) at which a quorum of members of the governmental body is
present;

(iii) that has been called by the governmental body;

(continued...)

No. 11-50441

because the applicability of the regulation depends on the content of the speech. A statute that appears content-based on its face may still be deemed content-neutral if it is justified without regard to the content of the speech. *See Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47-78 (1986).

## A.

In *Playtime Theaters*, the Court upheld a zoning ordinance that was facially content-based because it applied only to theaters showing sexually-explicit material. The Court reasoned that the regulation was content-neutral because it was not aimed at suppressing the erotic message of the speech but instead at the "secondary effects"—such as crime and lowered property values—that tended to accompany such theaters. *Id.* at 48. The Court concluded that the "ordinance is completely consistent with [the] definition of 'content-neutral' speech regulations as those that 'are *justified* without reference to the content of the regulated speech.'" *Id.* Content-neutrality has continued to be defined by the justification

---

(...continued)

and

    (iv) at which the members receive information from, give information to, ask questions of, or receive questions from any third person, including an employee of the governmental body, about the public business or public policy over which the governmental body has supervision or control.

The term does not include the gathering of a quorum of a governmental body at a social function unrelated to the public business that is conducted by the body, or the attendance by a quorum of a governmental body at a regional, state, or national convention or workshop, ceremonial event, or press conference, if formal action is not taken and any discussion of public business is incidental to the social function, convention, workshop, ceremonial event, or press conference.

The term includes a session of a governmental body.

of the law or regulation,[8] and this court has consistently employed that test.[9]

Plaintiffs propose a different test: "A regulatory scheme that requires the government to 'examine the content of the message that is conveyed' is content-based regardless of its motivating purpose." *Serv. Employees Int'l Union, Local 5 v. City of Hous.,* 595 F.3d 588, 596 (5th Cir. 2010) (quoting *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 230 (1987)). That formulation, however, does not accurately state the law.

First, it is *dictum* and conflicts with the analysis the panel ultimately used. The panel went on to determine content-neutrality according to the purpose of the regulations in question, ultimately finding them to be content-neutral. *Id.* at 600, 602. Second, the opinion cites no authority supporting the last clause of the test, "regardless of its motivating purpose." *Arkansas Writers' Project*, the case cited at the end of the test, does not hold that motivating purpose is irrelevant to content-neutrality; that case is cited because it contains the language in the quotation, "examine the content of the message that is conveyed." Finally, the test contradicts Supreme Court precedent and other Fifth Circuit opinions that determine content-neutrality according to the purpose of the regulation, as described above.

---

[8] *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (stating that "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys . . . . The government's purpose is the controlling consideration."); *Colorado v. Hill*, 530 U.S. 703, 719 (2000); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 122 (1991).

[9] *See, e.g.*, *Palmer v. Waxahachie Indep. Sch. Dist.,* 579 F.3d 502, 510 (5th Cir. 2009); *Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 409 n.5 (5th Cir. 2007); *Illusions-Dall. Private Club, Inc. v. Steen*, 482 F.3d 299, 308 (5th Cir. 2007); *Fantasy Ranch Inc. v. City of Arlington, Tex.*, 459 F.3d 546, 554-56 (5th Cir. 2006); *Brazos Valley Coal. for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 326-27 (5th Cir. 2005); *de la O v. Hous. Auth. of City of El Paso, Tex.*, 417 F.3d 495, 503 (5th Cir. 2005); *N.W. Enters. Inc. v. City of Hous.*, 352 F.3d 162, 174 (5th Cir. 2003); *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 292 (5th Cir. 2003); *Horton v. City of Hous.*, 179 F.3d 188, 193 (5th Cir. 1999).

No. 11-50441

The best support plaintiffs offer for their contention that content-neutrality is determined without examining the purpose of the regulation is *Burson v. Freeman*, 504 U.S. 191 (1992), which upheld a statute that prohibited the solicitation of votes within one hundred feet of a polling place. The plurality sustained the statute after finding that it satisfied strict scrutiny, but it so decided without discussing the purpose of the speech; the plurality merely stated that the regulation was *facially* content-based.[10] Because the plurality ultimately found that the statute satisfied strict scrutiny, however, it may have considered an in-depth purpose analysis to be unnecessary.

Moreover, part of the reason the Court applied exacting scrutiny in *Freeman* is that the statute's prohibition applied to speech in a public, not private, forum.[11] The prohibition in TOMA is applicable only to private forums and is designed to *encourage* public discussion, whereas the prohibition in the statute in *Freeman* operated to *discourage* public discussion. Therefore, *Freeman* does not stand for the proposition that the regulation's justification is not the controlling factor in determining content-neutrality.

B.

Regarding content-neutral justification, the district court found that Section 551.144's purpose is to control the secondary effects of closed meetings. The court opined that closed meetings (1) prevent transparency; (2) encourage fraud

---

[10] *Freeman*, 504 U.S. at 197 ("The Tennessee restriction under consideration, however, is not a facially content-neutral time, place, or manner restriction. Whether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign.").

[11] *See id.* ("[T]he First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of *public* discussion of an entire topic." (emphasis added); *id.* at 198 ("As a facially content-based restriction on political speech in a *public* forum, [the state statute] must be subjected to exacting scrutiny[.]") (emphasis added).

No. 11-50441

and corruption; and (3) foster mistrust in government. Those justifications are unrelated to the messages or ideas that are likely to be expressed in closed meetings. The allegedly content-based requirement—that the speech concern public policy—is relevant, because only that speech would have the effects listed above. If a quorum of a governing body were to meet in secret and discuss knitting or other topics unrelated to their powers as a governing body, no harm would occur. This situation is analogous to *Playtime Theaters*, in which only adult movie theaters attracted crime and lowered property values—but not because the ideas or messages expressed in adult movies caused crime.

The instant case is unlike *Boos v. Berry,* 485 U.S. 312 (1988), in which the Court struck down an ordinance that restricted criticism of foreign governments near their embassies. The government argued that the ordinance was justified by the need to protect the dignity of foreign diplomatic personnel. *Id.* at 321 (plurality opinion). Justice O'Connor distinguished the case from *Playtime Theaters* because the "secondary effect" was a direct result of the message or idea in the speech. *Id.* Foreign diplomats were offended because of the criticism's message.

Here, government is not made less transparent because of the message of private speech about public policy: Transparency is furthered by allowing the public to have access to government decisionmaking. This is true whether those decisions are made by cogent empirical arguments or coin-flips. The private speech itself makes the government less transparent regardless of its message. The statute is therefore content-neutral.

Plaintiffs cite *Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729 (2011), to support their argument that TOMA is too underinclusive to be content-neutral because it does not cover the Legislature, Governor, mayors, or other executive policymakers. The Court rejected the state's arguments that a statute restricting the sale of violent video games to minors was justified by a

No. 11-50441

content-neutral purpose.  In doing so, the Court used the statute's underinclu-
siveness to reject the state's asserted content-neutral justification for the law.
*Id.* at 2740.  Thus, the underinclusiveness was merely evidence of the justifica-
tion rather than an independent cause of unconstitutionality.  Here, there is lit-
tle reason to think the state is suppressing private speech for any reason other
than the content-neutral goals listed above.  Accordingly, *Entertainment Mer-
chants* does not counsel in favor of unconstitutionality.

Plaintiffs also argue that TOMA is content-based because it is identity-
based—it applies only to speakers who are members of governmental bodies.
This contention is based on a misreading of *Citizens United v. Federal Election
Commission*, 130 S. Ct. 876 (2010), in which the Court struck down a statute
restricting the political donations of corporations and labor unions.  The Court
found that the statute's restriction to particular speakers was meant to disfavor
the views of those speakers, evidencing a content-based purpose.  *Id.* at 888-89.
Here, the statute does not apply to government officials because of any hostility
to their views.  Rather, only private speech by government officials lessens gov-
ernment transparency, facilitates corruption, and reduces confidence in govern-
ment. Therefore, the identity-based application of the statute is not evidence of
a content-based purpose.

A separate harm arising from the use of identity concerned the Court in
*Citizens United*:

> By taking the right to speak from some and giving it to others, the
> Government deprives the disadvantaged person or class of the right
> to use speech to strive to establish worth, standing, and respect for
> the speaker's voice.  The Government may not by these means
> deprive the public of the right and privilege to determine for itself
> what speech and speakers are worthy of consideration.

*Id.* at 899.  This is a concern about public attitudes toward particular ideas and
speakers.  It is aimed at regulations that keep speech from reaching the mar-

No. 11-50441

ketplace of ideas, and it is therefore inapplicable to statutes that restrict only private speech. Thus, TOMA's application to only members of public bodies does not raise either of the concerns expressed in *Citizens United*.

Accordingly, TOMA is a content-neutral time, place, or manner restriction, and as such, it should be subjected to intermediate scrutiny. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). Plaintiffs do not challenge the district court's conclusion that TOMA meets intermediate scrutiny, so we do not reach that issue. *See United States v. Thibodeaux,* 211 F.3d 910, 912 (5th Cir. 2000).

IV.

The district court concluded that TOMA, like the disclosure statute upheld in *Citizens United*, requires disclosure of speech but does not suppress it. To reach the conclusion that the statute does not suppress speech, the court construed TOMA to allow violations to be cured by later disclosure. It appears that the court misconstrued the statute and that a violation of Section 551.144 could result in criminal penalties even if the speech were later disclosed. Nevertheless, the court's ultimate conclusion was correct: TOMA is a disclosure statute and should be upheld in accordance with *Citizens United.*

For First Amendment purposes, the requirement to make information public is treated more leniently than are other speech regulations. The Court has often upheld disclosure provisions even where it has struck down other regulations of speech in the same statutes. *See, e.g.*, *Citizens United*, 130 S. Ct. at 914; *Buckley v. Valeo*, 424 U.S. 1, 68 (1976). And the Court has generally upheld disclosure requirements that are unlikely to subject the speaker to harassment or persecution. *See e.g.*, *United States v. Harriss*, 347 U.S. 612, 625 (1954); *Doe #1 v. Reed*, 130 S. Ct. 2811, 2818-21 (2010). The justification is that disclosure requirements are less effective in suppressing the underlying ideas of the speech

No. 11-50441

that is burdened.[12]

In *Citizens United*, the Court upheld the portions of the Bipartisan Campaign Reform Act ("BCRA") that required political advertisements to contain disclaimers indicating who paid for them. *Id.* Because the Court classified the statute as a disclosure requirement, it subjected it to exacting rather than strict scrutiny. *Id.* The Court reasoned that disclosure requirements do not prevent individuals from speaking even if they burden the ability to speak. *Id.* As with the BCRA, TOMA burdens the ability to speak by requiring disclosure. TOMA's disclosure requirement burdens private political speech among a quorum of a governing body, but it does so in the same way that the BCRA's disclosure requirement burdened anonymous political speech in political advertisements. Neither statute aims to suppress the underlying ideas or messages, and they arguably magnify the ideas and messages by requiring their disclosure.

Plaintiffs contend that because TOMA punishes private speech, it does not merely require disclosure. That is a distinction without a difference: To enforce a disclosure requirement of certain speech, the government must have the ability to punish its nondisclosure. If there were no punishment for nondisclosure, the speaker would have no incentive to disclose until the enforcer of the statute prosecuted him or obtained an injunction. That would render any disclosure requirement so arduous to enforce that it would be ineffective.

The district court did not address this issue, because it construed Section 551.144 to allow public officials to avoid punishment by later disclosing their private speech. To support that construction, the court cited *Burks v. Yarbrough*, 157 S.W. 3d 876, 883 (Tex. App.—Houston [14th Dist.] 2005, no pet.), but that case dealt not with Section 551.144 but with Section 551.141, which makes acts

---

[12] *See Citizens United*, 130 S. Ct. at 914 ("[D]isclosure requirements may burden the ability to speak, but they . . . do not prevent anyone from speaking.") (internal quotation marks and citations omitted).

No. 11-50441

of governmental bodies voidable when they violate TOMA. Furthermore, the justification for allowing public officials to cure voidable acts does not apply to criminal sanctions. If government officials were not able to cure voidable acts by later disclosure, the body could never again make the same decision once having taken that action in private. Because this problem does not arise with criminal sanctions, there is no reason to think the "redo" exception applies to criminal sanctions.

The absence of such a "redo" exception, however, does not prevent TOMA from being upheld under *Citizens United* and *Buckley*. The statute upheld in *Citizens United* was violated as soon as a political advertisement was televised without the required disclaimer. *See Citizens United*, 130 S. Ct. at 914. In *Buckley*, there is no indication that violations of the disclosure requirements were curable by later disclosure. Furthermore, violations of that disclosure statute were punishable by a fine of up to $1,000, a year in prison, or both—twice the maximum prison term and fine as in Section 551.144. *See Buckley*, 424 U.S. at 64. Therefore, the fact that TOMA is enforced with penalties other than requiring disclosure does not prevent it from being treated as a disclosure requirement for First Amendment purposes.

Finally, the plaintiffs contend that, even if Section 551.144 is treated as a disclosure requirement, it is unconstitutional because it subjects them to harassment and persecution by the authorities in the form of criminal prosecution. "[T]hose resisting disclosure can prevail under the First Amendment if they can show 'a reasonable probability that the compelled disclosure will subject them to threats, harassment, or reprisals from either Government officials or private parties.'" *Doe #1*, 130 S. Ct. at 2821 (quoting *Buckley*, 424 U.S. at 74). Plaintiffs' argument fails, however, because the harassment they are alleging is the enforcement of the statute itself. If the enforcement of a disclosure statute constituted harassment, then all disclosure requirements enforced by penalties

12

would be unconstitutional. As noted above, the Court has upheld disclosure requirements that are enforced by penalties more severe than TOMA's. *See, e.g., Buckley*, 424 U.S. at 64.

Because Section 551.144 punishes private speech in order to enforce a disclosure requirement, it is no less a disclosure requirement than are the statutes upheld in *Citizens United* and *Buckley*. If it were not a content-neutral time, place, or manner restriction, it would be subject to exacting scrutiny.[13] Because it is content-neutral, however, intermediate scrutiny is the appropriate standard. *Turner Broad.*, 512 U.S. at 642.

## V.

Plaintiffs contend that Section 551.144 is overbroad because it criminalizes all private speech among a quorum of a governing body that is about public policy, and most of such speech does not lead to corruption. The plaintiffs' argument fails, because it ignores the other purposes of TOMA, such as increasing transparency, fostering trust in government, and ensuring that all members of a governing body may take part in the discussion of public business. With respect to these other goals, TOMA is not overbroad.

For a statute to be overbroad, it must "reach[] a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). "The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). It is not evident that Section 551.144 is reaching "a substantial amount of constitu-

---

[13] *Citizens United*, 130 S. Ct. at 914, defines exacting scrutiny as requiring "a substantial relation between the disclosure requirement and a sufficiently important government interest." To withstand such scrutiny, "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Doe #1*, 130 S. Ct. 2811 (2010) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 128 S. Ct. 2759, 2775 (2008)).

tionally protected speech," because plaintiffs offer no support for the proposition that government officials have a constitutional right to discuss public policy among a quorum of their governing body in private. Furthermore, the speech the statute does reach is within its "plainly legitimate sweep" in fostering government transparency, trust in government, and participation by all elected officials.

Because Section 551.144 reaches only private discussion of public business among a quorum of a governing body, plaintiffs—to show overbreadth—must demonstrate that they have a constitutional right to such speech. They offer no support for that proposition, and there is reason to think that the First Amendment does not protect the right of government officials to deliberate in private, given that it sometimes requires them to open their proceedings to the public.

The public's right of access extends at least to criminal proceedings.[14] The justification for this right of access, however, extends to government affairs generally: "[A] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs" and "to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe*, 457 U.S. at 604 (quotations omitted). It makes little sense for the First Amendment to require states to open their criminal proceedings while prohibiting them from doing so with their policymaking proceedings. Therefore, Section 551.144 does not prohibit constitutionally protected speech.

Even if the plaintiffs were able to show that TOMA reaches a substantial amount of protected speech, they have not established that its overbreadth is "substantial as well, judged in relation to the statute's plainly legitimate sweep."

---

[14] *See Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 509-11 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604-05 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580-81 (1980).

No. 11-50441

*Broadrick,* 413 U.S. at 615. They offer only one example[15] of a situation in which local government officials have a legitimate reason to discuss public business privately: when the City of Hurst was considering the prohibition of a then-legal drug and did not want to disclose where it was being sold. The plaintiffs point out that this speech does not lead to corruption, and they conclude that it is thus outside TOMA's legitimate sweep.

That notion fails, because it ignores TOMA's other goals apart from reducing corruption. Having that discussion privately would decrease government transparency, and the state has determined that the benefits of making these discussions public outweigh any harm done by the disclosure of information. Thus, the plaintiffs have not shown that TOMA reaches outside its plainly legitimate sweep.

---

[15] In its brief as *amicus curiae*, the Texas Municipal League offers other situations in which TOMA arguably could prohibit constitutionally-protected speech. For example, *amicus* mentions a situation in which a city council member is prohibited from attending a civic event at which a fellow member who is running for re-election will be speaking about public-policy issues. *Amicus* argues that that is prohibited, because it is a quorum discussing government policy at an event not open to the general public.

The potential situations listed, however, are not from actual cases but are only examples of advice attorneys have given to local government officials. Furthermore, such broad interpretations of the law are suspect, given that TOMA appears to exclude such gatherings from its definition of "meeting":

> ["Meeting"] does not include the gathering of a quorum of a governmental body at a social function unrelated to the public business that is conducted by the body, or the attendance by a quorum of a governmental body at a regional, state, or national convention or workshop, ceremonial event, or press conference, if formal action is not taken and any discussion of public business is incidental to the social function, convention, workshop, ceremonial event, or press conference.

TEX. GOV'T CODE § 551.001. Furthermore, narrower constructions of statutes are preferable in overbreadth cases, because speech burdened by broader interpretations can be protected by as-applied challenges. *See New York v. Ferber*, 458 U.S. 747, 773-74 (1982).

No. 11-50441

## VI.

Plaintiffs claim that TOMA is unconstitutionally vague because it is so unclear that public officials need an educational course to comply with it, and even lawyers that specialize in TOMA often cannot predict its interpretation. Vagueness is necessarily a matter of degree, and plaintiffs have not shown that TOMA is as vague as the statutes that have been found unconstitutional. Furthermore, neither of the issues plaintiffs point to implicates the underlying purpose of the vagueness doctrine: preventing government from chilling substantial amounts of speech and facilitating discriminatory and arbitrary enforcement.

The concern underlying the vagueness doctrine is that citizens will not be able to predict which actions fall within the statute, leading to arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983). Where there are few guidelines for the application of a statute, a "standardless sweep" could allow "policemen, prosecutors, and juries to pursue their personal predilections." *Id.* The speech-restricting laws that the Court has found unconstitutionally vague are indeed standardless.[16]

In contrast, plaintiffs point to no section of TOMA that is vague on its face. Plaintiffs' complaints arise from TOMA's complexity rather than its vagueness or lack of standards. A great deal of training may be required to predict the interpretation of the tax code, for example, but that is not because it is standardless or arbitrary. In fact, the vast body of law that causes TOMA to be so complex arguably makes it less vague by providing the necessary standards. Plaintiffs do not argue that any of the cases interpreting TOMA conflicts or add ambi-

---

[16] *See, e.g., Smith v. Goguen*, 415 U.S. 566 (1974) (striking down a statute that prohibited treating the flag "contemptuously"); *Baggett v. Bullitt*, 377 U.S. 360 (1964) (striking down a statute that prohibited employment by the state of any "subversive person"); *City of Hous., Tex. v. Hill*, 482 U.S. 451 (1987) (striking down a statute that made it unlawful to "interrupt any policeman in the execution of his duty").

No. 11-50441

guity.[17]  The fact that plaintiffs point to TOMA as a whole rather than to a particular ambiguous portion distinguishes their argument from reasoning expressed by the Supreme Court when striking down statutes for vagueness. Some ambiguity is unavoidable, and "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2719 (2010) (citation and internal quotation marks omitted).  TOMA is not unconstitutionally vague.

## VII.

In summary, TOMA is content-neutral and is not unconstitutionally overbroad or vague.  It is also a disclosure statute, though that does not change the level of scrutiny, because the statute is content-neutral.  The district court properly applied intermediate scrutiny, and the judgment is AFFIRMED.

---

[17] There are seventy-four sections of TOMA and countless cases interpreting it.