OPINION
STEVE McKEITHEN, Chief Justice
Derek Ty Poe was charged by information with the misdemeanor offense of disorderly conduct. See Tex. Penal Code Ann. § 42.01(a)(8) (West Supp.2015). Poe filed an application for pretrial writ of habeas corpus, in which he contended that the disorderly conduct statute is facially unconstitutional due to its alleged vagueness and its alleged infringement upon his rights under the First, Second, Fifth, and Fourteenth' Amendments to the United States Constitution and Article I, sections 8,10,19, and 23. of the Texas Constitution, See. Tex. Penal Code Ann, § 42.01(a)(8).[1] After - conducting an evidentiary hearing, the trial court denied Poe’s application. In two appellate issues, Poe challenges the trial court’s denial of his habeas application. We affirm the trial court’s order denying habeas relief,
' BACKGROUND
The State charged Poe with disorderly conduct. Specifically, the State contended that Poe “intentionally and knowingly display[ed] a deadly weapon, namely a firearm, in a public place and in a manner calculated to alarm[.]” Poe filed an application for pretrial writ of habeas corpus, in which he asserted that section 42.01(a)(8) of the Penal Code is unconstitutionally vague, overbroad, and violates his “constitutional rights to free speech and to bear arms[.]” Poe asserted that “the act of displaying a firearm is conduct protected by the First Amendment,” Poe contended that the terms “displaying,” “manner,” “calculated,” and “alarm” are undefined, rendering the - statute vague and overly broad, and he argued that the . statute fails to- give a person of ordinary intelligence fair notice “that the statute outlaws certain conduct and therefore encourages the police' and the prosecution to make arbitrary and erratic-arrests and convictions.”
According to Poe, the statute “provides no guidance or explanation as to what facts or circumstance[s] must exist in order to determine if a defendant’s conduct was done with the specific intent showing that he calculated his display of a firearm to be alarming.” Poe maintained that the statute fails to give a reasonable person guidance as to what specific conduct is prohibited, and the statute’s deficiencies “prevent law enforcement from having clear guidance as to what conduct in displaying a firearm is criminalized as being ⅛ manner *351 calculated to alarm.’” Poe also argued that section 42.01(a)(8) has a chilling effect on public displays of firearms as an exercise of First Amendment rights. In addition, Poe contended that the statute violates the fundamental rights of persons to keep and bear arms under the Second Amendment.
Poe attached three affidavits to his application. The affidavit of T. Edwin Walker, Poe’s attorney, stated that Walker had done an internet search for protests and activities involving open display of firearms for First Amendment purposes, and he averred that the twenty-eight pages attached to his affidavit were true and correct copies of the original news articles as posted on the Internet. Terry Louis Holcomb averred in his affidavit that he is the Executive Director of Texas Carry, Inc., a non-profit corporation that advocates for open carry of handguns. Holcomb explained in the affidavit that “we plainly communicated to the Texas Legislature that if they did not allow a vote on the bill for open carry of a handgun with a concealed handgun license, ... we would put on our long guns and carry them all across Texas in protest of the restrictions on our handguns.” According to Holcomb,
[t]he sole purpose of openly earcying rifles and shotguns is to express our belief that people should be allowed to openly carry handguns. We are attempting to educate the public not alarm them. We have no intention to alarm anyone which is why all rifles and shotguns are displayed in a safe[,] nonthreatening manner.
Holcomb further averred that in Texas, there have been eighteen arrests for openly carrying a rifle, shotgun, or “replica pre-1899 black powder pistol,” without a single conviction. According to Holcomb, “[w]e are intimidated with threat of arrest and told we cannot openly carry rifles, shotguns, and replica pre-1899 black powder pistols because a person may find the mere display of them to be alarming.” Christopher John Grisham averred in his affidavit that he is President and Founder of Open Carry Texas (OCT), a non-profit gun rights group. According to Grisham, “OCT members have been arrested more than two dozen times for the lawful carry of their firearms openly as an expression of our mission to educate Texans on gun rights and secure more meaningful legislation that recognizes our right to keep and bear arms.” Grisham averred that “citizens can be arrested for a mere complaint and claim that one is ‘alarmed’ and not because any actual crime was committed.” According to Grisham,' openly carrying long arms and pre-1899 antique or replica revolvers is
immensely important as a [First] Amendment issue as it draws attention and encourages dialogue on our efforts[1]. No single method of speech has been more successful for us than the open display of firearms in a peaceful and respectful manner than carrying these long arms. Signs and flags only draw attention to the protestor, not the cause.
Grisham stated that “the law creates different standards depending on the complainant’s beliefs about guns in public.”
In response to Poe’s application, the State asserted that three days after Christmas 2013, during evening hours when Parkdale ■ Mall was crowded, Poe “harnessed and shouldered an AR-15 223 Caliber Assault Rifle [ ] and began traversing the Mall. Mall patrons[ ] and • store workers were ■ horrified, and as a result, many calls were made to- 911,”[2] Accord *352 ing to the State, when Beaumont police officers approached Poe, Poe “immediately became belligerent with the officers While espousing [his] Second Amendment Rights[,]” but Poe eventually gave the rifle to the officers. The State asserted that Poe revealed to the officers that he was walking around the mall simply to exercise his Second Amendment right. The State argued that section 42.01(a)(8) is not overly broad or unconstitutionally vague, and asserted that Poe’s actions were “clearly calculated to cause fear and panic.”
At the habeas hearing, Poe testified that he had served in the Army for four years, and at the time of the alleged offense, he owned a firearms accessory store called Golden Triangle Tactical, which was located m Parkdale Mall. Poe testified that he commonly carried his rifle from his home to his place of business at the mall. Poe testified that on the day of the incident in December 2013, he was carrying the rifle across his back, and he had a bag of food in one hand and a drink in the other hand. According to Poe, he was carrying the rifle in a safe manner, and he was not threatening anyone or presenting the rifle in a threatening manner. Poe testified that, based upon his experience in the military, whenever a threat is anticipated, a rifle is carried in front of the body in what is called the “low ready” stance “so we could bring it up to the high ready if we’re ready to engage.” According to Poe, if someone were walking in anticipation of using his rifle, he would not cany it across his back.
Poe explained that part of the reason he carries his rifle on his back is because he believes he has a First Amendment right to do so to advocate for his Second Amendment rights. According to Poe, whenever he is walking with his rifle on his back, he is expressing his belief in the Second Amendment. Poe testified that he also carries his rifle to protest restrictions on open carry of handguns. Poe testified that Parkdale Mall is owned by a private company, and he explained that prior to the incident that led to his being charged with disorderly conduct, Parkdale Mall’s management and security guards had never told him not to bring his rifle into the mall.
Terry Holcomb Sr. testified that he is the executive director of Texas Carry, which he explained is “a Second Amendment gun rights policy group that works with the legislature to enact removing barriers for our Second Amendment rights.” Holcomb testified that he engages in First Amendment activities as an advocate for firearms rights. According to Holcomb, some of Texas Carry’s First Amendment activities involve walking while wearing long rifles or long shotguns. Holcomb explained that the purpose of carrying guns in that manner was to protest Texas’s lack of an open carry law for handguns, and people who were doing so were anticipating that other people will see them. Holcomb testified that the purpose of displaying the firearms in such a manner is not to cause alarm, but to “educate- the Texas citizens to the absurdity of our current laws.” According to Holcomb, displaying a rifle on a sling across someone’s back or side is a safe, non-threatening means of displaying the gun.
Holcomb testified that activists against gun rights sometimes use the disorderly conduct statute against gun rights protesters by a practice called “swatting.” Holcomb explained that swatting involves contacting law enforcement and reporting that someone protesting by wearing a gun is about to rob a store, waving the gun around, or doing something threatening. *353 According to Holcomb, although swatting is a common practice, no protester has been convicted under the disorderly conduct statute. Holcomb testified, “we’re all very much aware that if we try and express our protests [at the capitol in Austin] that they will arrest us.” During cross-examination, Holcomb testified that someone exercising First Amendment rights cannot falsely shout the word “fire” in a crowded theater or the words “hijack” or “gun” on an airplane. Holcomb also explained that the owner of private property can prohibit the carrying of a firearm on his property.
POE’S ISSUES
In his first issue, Poe argues that section 42.01(a)(8) of the Texas Penal Code “is unconstitutionally vague pursuant to the First, Second, Fifth, and Fourteenth Amendments to the United States Constitution.” In his second issue, Poe argues that section 42.01(a)(8) is unconstitutionally overbroad. We address Poe’s issues together.
“Whether a statute is facially constitutional is a question of law that we review de novo.” Ex parte Lo, 424 S.W.3d 10, 14 (Tex.Crim.App.2018). We presume that a statute is valid and that the Texas Legislature did not act unreasonably or arbitrarily. Id. at 14-15. “The burden normally rests upon the person challenging the statute to establish its unconstitutionality.” Id. at 15. “[W]hen the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed.” Id. “Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption.” Id.
Before a statute will be invalidated on its face as overbroad, the over-breadth must be real and substantial when “judged in relation to the statute’s plainly legitimate sweep.” Id. A statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application. See In re Shaw, 204 S.W.3d 9, 15 (Tex.App.-Texarkana 2006, pet. ref'd). With respect to vagueness, statutes are not necessarily unconstitutionally vague merely because the words or terms employed in the statute are not specifically defined. See Engelking v. State, 750 S.W.2d 213, 215 (Tex.Crim.App.1988). When a statute does not define the words used therein, we will give the words their plain meaning. See Parker v. State, 985 S.W.2d 460, 464 (Tex.Crim.App.1999); see also Tex. Gov’t Code Ann. § 311.011(a) (West 2013) (“Words and phrases shall be read in context and construed according to the rules of grammar and common usage.”). A statute will be invalidated if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. See State v. Holcombe, 187 S.W.3d 496, 499 (Tex.Crim.App.2006). We will not invalidate a statute for overbreadth “merely because it is possible to imagine some unconstitutional applications.” In re Shaw, 204 S.W.3d at 15.
Because Poe makes a facial challenge to the statute, he must prove that the statute is unconstitutional in every application, and that the statute could never be constitutionally applied to any defendant under any set of facts or circumstances.[3] See State v. Rosseau, 396 S.W.3d 550, 557 (Tex.Crim.App.2013); *354 Santikos v. State, 836 S.W.2d 631, 633 (Tex.Crim.App.1992). As previously discussed, whether a statute is facially constitutional is a question of law that we review de novo. Ex parte Lo, 424 S.W.3d at 14; Maloney v. State, 294 S.W.3d 613, 626 (Tex.App.-Houston [1st Dist.] 2009). If we determine that there is a reasonable construction which will render the statute constitutional, we must uphold the statute. Tarlton v. State, 93 S.W.3d 168, 175 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd).
Section 42.01(a)(8) provides as follows: “A person commits an offense if he intentionally or knowingly ... displays a firearm or other deadly weapon in a public place in a manner calculated to alarm[.]” Tex., Penal Code Ann. § 42.01(a)(8). The plain wording of section 42.01(a)(8) .provides that the punishable conduct is the intentional and knowing display of a firearm in a public place, and the actor must display the firearm “in a manner calculated to alarm [.] ” Id. (emphasis added). Section 42.01(a)(8) specifically includes a mens rea: it states the person must act intentionally or knowingly when he displays a . firearm in a public place, and his displaying of the firearm must have been calculated to alarm. Id. The disorderly conduct offense defined by subsection (a)(8) is the conduct of displaying a firearm in a public place m a manner calculated to alarm. See id.
In this case, the - charging instrument alleged that Poe “intentionally and knowingly displayed a deadly weapon, namely a firearm, in a, public place and in a manner calculated to alarm[.]” We conclude that (1) the statute punishes conduct rather than the content of speech alone, and (2) the statute bears a rational relationship tó the State’s legitimate and compelling interest in protecting its citizens from potential harm. See Broadrick, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Ex parte Woodall, 154 S.W.3d 698, 702 (Tex.App.-El Paso 2004, pet. ref'd) (holding that ordinance restricting smoking bears a rational relationship to interest in protecting general health, safety, and welfare); see also Ex parte Lo, 424 S.W.3d 10, 16-17 (noting the distinction between regulating speech versus regulating conduct).
Because section 42.01(a)(8) punishes conduct, we reject Poe’s argument that we should analyze his appellate issues using the strict scrutiny standard of review. Accordingly, we begin by presuming that the statute is valid, and that the legislature did not act arbitrarily or unreasonably in enacting the statute. Ex parte Lo, 424 S.W.3d at 15.
As previously discussed, Poe asserts thát the statute is “unconstitutionally vague because it does not give a reasonable person guidance as to what specific conduct is prohibited.” Poe complains that the word “alarm” is “inherently subjective[,]” and he argu'es that “there is a great degree of variance of human perception of which conduct is alarming[.]”' We begin by looking to the language of the statute and giving terms their plain meaning. See Parker, 985 S.W.2d at 464; see also Tex. Gov’t Code Ann. § 311.011(a).
Although the statute does not define the .terms, “manner[,]” “calculated[,]” or “alarm[,]” we conclude that those words have commonly known and accepted usage and meaning. “Manner” is defined as the “mode or method in which something is done or happens.” WebsteR’s THIRD new int’l dictionary 1376 (2002). “Calculated” is defined as “planned or contrived so as to accomplish a purpose or achieve an effect-thought out in advance: deliberately planned[.]” Id. at 315. “Alarm” is defined as “fear or terror resulting from a sudden sense of danger[.]” Id. at 48. We conclude that the statute describes the criminal offense with sufficient definiteness that *355 ordinary people can understand what conduct is prohibited. See Holcombe, 187 S.W.3d at 499. The statute’s requirements that the display of a firearm be done intentionally or knowingly and in a maimer calculated to alarm take the context of the actor’s speech into question and require the State to meet a high burden of proving the requisite mental state. We, conclude that the statute is reasonably related to the State’s legitimate interest in protecting the public from harm. Poe . has not satisfied his burden to prove that the statute is unconstitutionally vague, and we conclude that the statute provides fair notice of the prohibited conduct.
The United States Supreme Court has held that the overbreadth doctrine involves balancing the effects of the statute on protected speech with the otherwise legitimate and necessary prohibition of antisocial behavior that has been made criminal. See United States v. Williams, 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). The United States Supreme Court held as follows: “In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute’s overbreadth be substantial, not only in an absolute sense, but .also relative to the statute’s plainly legitimate sweep. Invalidation for overbreadth is ‘strong medicine’ that is not to be ‘casually employed.’ ” Id. (internal citations omitted). Section 42.01(a)(8) unambiguously provides that a person is prohibited from “intentionally or knowingly” displaying a weapon in a public place “in a manner calculated to alarm[.]” Tex. Penal Code Ann. § 42.01(a)(8).
We conclude that although there clearly are constitutional rights to bear arms and to express oneself freely, there is no constitutionally protected right to display a firearm in a public place in a manner that is calculated to alarm. In addition, we note that Poe’s own evidence indicates that the- statute is rarely employed against protesters and has not resulted in any convictions of protesters who are exercising their First and Second Amendment rights. The statute’s plainly legitimate sweep bears a rational relationship-to the State’s interest in public safety and welfare. Accordingly, we overrule Poe’s issues and affirm the trial court’s order denying Poe’s application for writ of habeas corpus; '
AFFIRMED.

. Although various subsections of section 42.01 have been amended or deleted since the •statute was enacted on January 1, 1974, with the exception of being renumbered, the language of the current version of section §'42.01(a)(8) is identical to the language the Legislature used when that subsection was enacted. See Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, sec. 42.01(a)(9), 1973 Tex. Gen. Laws 883, 954 (current version at Tex, Penal Code Ann. § 42.01(a)(8) (West Supp. 2015)). Therefore, we cite to the current version of the statute.

. The State's use of the language "assault rifle” to describe the AR-15 is, at best, inac- - curate. These rifles are not capable of being 'fired in the automatic mode; the trigger must *352 be pulled every time a bullet is fired. The "AR” designation references ArmaLite, the firearms manufacturing company that originally designed the AR-15.

. Poe has not made an 'as-applied' challenge; further, the factual development of the evidence in the record before us is insufficient to allow us to consider such a claim.