# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00579-CR

**Perry Lee Penning, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY,
### NO. C-1-CR-12-209292,
### THE HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Perry Lee Penning guilty of disorderly conduct by displaying a firearm, a class B misdemeanor. *See* Tex. Penal Code § 42.01(a)(8), (d). The trial court assessed appellant's punishment at 180 days' confinement in the county jail and assessed a $2,000 fine, suspending the imposition of the sentence and fine and placing appellant on community supervision for two years. *See* Tex. Code Crim. Proc. art. 42.12, § 3(a). In two points of error, appellant complains about error in the jury charge resulting from the trial court's denial of his requested instructions on the defenses of necessity and self-defense. We affirm the trial court's order granting misdemeanor community supervision.

## BACKGROUND[1]

The instant charge arose out of a roadway encounter between two drivers on Highway 183 in Austin. Jerold Hill, driving a white Buick LaSabre, was driving in the right lane (of three lanes), which merged into the center lane. Unable to successfully merge because the center lane drivers would not let him in, Hill was forced to drive on the shoulder of the roadway. However, the shoulder was ending, cut off by a guardrail for an upcoming bridge, so Hill was compelled to abruptly merge into the center lane in front of appellant's white Volkswagen. Appellant was forced to brake. He then drove around Hill and stopped his car in the lane of traffic immediately in front of Hill's car, cutting him off.

Appellant got out of his car, yelling as he approached the Buick to confront Hill. He stood at the driver side window yelling and cursing at Hill, who remained seated in his car and reached for his cell phone. At that time, appellant raised up his shirt and removed a gun from a holster on his hip.[2] After seeing the gun, Hill stopped reaching for his phone. Appellant then put

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

[2] The record contains conflicting testimony concerning appellant's actions with his weapon. Hill testified that appellant pulled the gun from the holster. Appellant did not aim the weapon at Hill but kept it by his side pointed at the ground.

An eyewitness who was driving behind appellant testified that when appellant confronted Hill at his car window, appellant lifted his shirt and grabbed the handle of the gun, but did not remove it from the holster, and he yelled either "If you do it, you're dead," or, "If I pull it, you're dead."

In his testimony, appellant denied touching his gun at all and instead insisted that he merely pulled his shirt tight over the holster and put his hand over his gun to indicate he was armed. He said the only communication he had with Hill was telling him "If you hit my car, you ain't leaving." before he took any actions regarding his gun.

his gun back in the holster and returned to his car. Hill drove around appellant's car and exited the highway. Appellant followed Hill, also exiting the highway. When Hill realized appellant was following him, he called 911. Appellant continued following Hill for about ten minutes before pulling into a convenience store parking lot, where police encountered, detained, and eventually arrested him.

## DISCUSSION

Appellant raises two points of error complaining about error in the jury charge. In his first point of error, appellant argues that the trial court erred by denying his requested jury charge instruction on the necessity defense. In his second point of error, he asserts that the trial court erred by denying his requested jury charge instruction on self-defense.

The trial court is statutorily obligated to give the jury a written charge setting forth the "law applicable to the case." Tex. Code Crim. Proc. art. 36.14; *Leach v. State*, No. 03-13-00784-CR, 2015 WL 8607060, at *2 (Tex. App.—Austin Dec. 9, 2015, no pet.) (mem. op., not designated for publication). The "law applicable to the case" includes statutory defenses, affirmative defenses, and justifications when they are raised by the evidence and requested by the defendant. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007); *Guzman v. State*, No. 03-13-00131-CR, 2015 WL 2400238, at *8 (Tex. App.—Austin May 13, 2015, pet. ref'd) (mem. op., not designated for publication). Here, appellant submitted proposed written instructions on the defenses of necessity and self-defense, and asked for their inclusion during the charge conference. *See* Tex. Crim. Proc. Code arts. 36.14, 36.15.

3

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If the jury charge error has been properly preserved by an objection or request for instruction, as it was here, reversal is required if the appellant has suffered "some harm" from the error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' which we have defined to mean that there is 'some harm.'").

Both necessity and self-defense are justification defenses set forth in the Penal Code that excuse otherwise criminal conduct. *See* Tex. Penal Code § 9.02 ("It is a defense to prosecution that the conduct in question is justified under [Chapter 9 of the Penal Code]."); *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) ("This justification, by definition, does not negate any element of the offense, including culpable intent; it only excuses what would otherwise constitute criminal conduct."). The defense of necessity, set forth in section 9.22 of the Penal Code, justifies unlawful conduct if "(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) the legislative purpose to exclude the justification claimed for the conduct does not

4

otherwise plainly appear." Tex. Penal Code § 9.22. Self-defense, defined by section 9.31 of the Penal Code, is the use of force "against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a).

Justification defenses, including necessity and self-defense, are based on the confession-and-avoidance doctrine, which requires a defendant to admit the conduct—both the act or omission and the requisite culpable mental state—of the charged offense. *Juarez v. State*, 308 S.W.3d 398, 401–04 (Tex. Crim. App. 2010) (discussing confession-and-avoidance doctrine with respect to affirmative defenses of necessity, self-defense, and Good-Samaritan defense). The doctrine requires a defendant to first admit that he engaged in the proscribed conduct by admitting to all elements of the underlying offense, then claim that his commission of the offense is justified because of other facts. *See id.*; *Shaw*, 243 S.W.3d at 659. Accordingly, "[a]n instruction on a confession and avoidance [defense] is appropriate only 'when the defendant's defensive evidence essentially admits to every element of the offense[,] including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct.'" *Villa v. State*, 417 S.W.3d 455, 462 (Tex. Crim. App. 2013) (quoting *Shaw*, 243 S.W.3d at 659).

The prohibited act of the disorderly conduct offense charged here, set forth in subsection (a)(8) of section 42.01 of the Penal Code, is the displaying of a firearm, with the surrounding circumstances that it be in a public place in a manner calculated to alarm. *See* Tex.

5

Penal Code § 42.01(a)(8).[3] The requisite culpable mental state for the offense is that it be committed intentionally or knowingly. *See id.* Thus, the conduct appellant was required to admit before being entitled to the instructions on the justification defenses he requested was the intentional or knowing display of a firearm in a manner calculated to alarm. *See Ex parte Poe*, No. 09-15-00373-CR, 2016 WL 1600607, at *4 (Tex. App.—Beaumont Apr. 20, 2016, pet. ref'd) ("The plain wording of section 42.01(a)(8) provides that the punishable conduct is the intentional and knowing display of a firearm in a public place, and the actor must display the firearm 'in a manner calculated to alarm[.]'") (citing Tex. Penal Code § 42.01(a)(8)).

When appellant took the stand, he testified during his direct examination[4] as follows (in relevant part):

> Q. Now, what do you have to say to the jury concerning the allegation that on June 6th, 2012 you knowingly and intentionally displayed your handgun in a public place?
>
> A. I never displayed my handgun. Never.
>
> Q. Okay. Now, when you got out of your car, did you intend to threaten Mr. Hill by placing your hand over your -- the location where your weapon was, to show Mr. Hill that you were armed and would use it if necessary?

---

[3] The relevant portions of the statute state:

(a)  A person commits an offense if he intentionally or knowingly:
. . .
(8)  displays a firearm or other deadly weapon in a public place in a manner calculated to alarm[.]

Tex. Penal Code § 42.01(a)(8).

[4] The State did not cross examine appellant.

A.      No.  I was even ignoring him yelling and screaming out of his car, something about he had to get to a hospital emergency room.

. . .

Q.      At some point during your interaction with Mr. Hill, did you intend to threaten Mr. Hill by placing your hand over your weapon to show that you were armed and would defend yourself if necessary?

A.      No.  I don't depend on showing it to anybody.

. . .

Q.      . . . What happened then?

A.      (After explaining that Hill had begun moving his car forward and appellant put his hand up to gesture for him to stop.) . . . Put my hand up.  He didn't stop.  I went like this, and I continued to go back to my car.  Then I went like this, put my hand over my weapon.  Never drew it.

. . .

Q.      Now, when you put your hand back, where was your hand over your weapon?

A.      My shirt was still down.  I didn't lift my shirt.  But when I go back -- I had a blue shirt on, so somebody looked and probably could think I lifted it.  But I tightened my shirt up, was the first thing I did.  And I'll put a finger under the edge of my shirt so as -- if I have to pick up, I can lift my shirt and access my weapon.  . . .

. . .

Q.      Okay.  Now -- okay.  So is your shirt -- is your hand on the outside of your shirt as you're reaching back?

A.      Yes, yes.

Q.      Okay.  So --

A.      At this point, about all that would be visible -- my front finger would have been under the edge of my shirt -- might be about that much of my holster.  That's it.

7

Q.     And did you say that you had tightened your shirt when you pulled it back?

A.     Yes.  When I pulled my -- like I say, my hand would be like this.  So you'd have -- with my shirt under this finger, you'd have about that much of my holster showing.

Q.     Okay.  Now, would it be obvious just from your position the fact that you had a weapon on your hip?

A.     Yes.

Q.     So a person driving by or coming by would assume that you had a weapon just based upon your posture and the way you were angled at that time.

       (At this point, the State objected, asserting that the question called for speculation.  The trial court sustained the objection.)

Q.     Do you have an opinion about whether a person driving by at that time would be aware --

A.     A normal person seeing somebody like this would -- it's a normal assumption for them to know I've got something.  And most likely it would be what it is.

. . .

A.     So I wanted to let him know that I can take care of myself; I have the ability to defend myself.

. . .

Q.     Now, when you say "use of force," are you talking about the threat of the use of force, or did you actually use force in this situation?

A.     I consider I used threat of force at the beginning, when I put my hand back and prepared to draw my weapon.  At that point right there, I -- when I put my hand out to tell him to stop, I used the force that was applied basically to tell him that if you come closer, if you try to hit me, if you don't stop your actions, I will defend myself.

Q.     Okay.  Now, did you intend to convey that threat to Mr. Hill when you put your hand on your hip?

8

A.     Yes.

Q.     Okay. Did you intend to display your weapon when you put your hand on your hip?

A.     No. My intention was not to display my weapon. In fact, I didn't even display it. My weapon is still in the holster. About all you could -- if you want to call it display -- it's less than half inch of barrel and maybe a piece of holster, so that would be display. It don't even meet the criteria of display in the law.

Q.     Now, is it possible, when you were reaching back, that you could have unknowingly or unintentionally displayed your weapon as your hand was going back?

A.     Well, anything's possible, I mean. But probably no, because of the way my shirt was. I mean, I was controlling my shirt. I had a hold of the edge, and I was pulling it back tight so when I draw it, it would -- I could get everything out of the way. I don't lift my shirt up and then try to go for my weapon. It's one motion.

Q.     And are you one of these cowboys or people that, you know, think it's impressive if you show people that you've got a gun or a weapon?

A.     No. 90 percent of the people never know I even carry.

Q.     So is displaying a weapon anything that you would ordinarily do in this type of situation?

A.     No. If I'm outside my house, you'll never know if I'm carrying. . . .

Appellant argues that he was entitled to his requested jury charge instructions because the requisites of the confession-and-avoidance doctrine were satisfied. He claims that although his testimony was "inconsistent or contradictory," he gave "some testimony confessing to conduct that shows commission of all the elements of the charged crime." He maintains that although he denied displaying his weapon (based on his own lay interpretation of the term "display"), he also gave

9

testimony "admitting to conduct that could meet both lay and legal definitions of display as the term is used in § 42.01(a)(8)" because he admitted to conduct that "could be construed as commission of the element in the legal sense." *See Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012) ("As for 'admitting' conduct under the doctrine of confession and avoidance, it is sufficient that the defendant point to defensive evidence, originating in his own statements, such that a trier of fact could reasonably infer that each element of the offense has been satisfied."). According to appellant, his testimony "to clearly manifesting the presence of his gun to [Hill] by his actions"—along with his agreement "that it would be obvious just from his position that he had a gun on his hip" and his admission that a small fraction of the gun barrel and perhaps some of the holster would have been visible—would allow a jury to infer that he "essentially admitted" to all the elements of the charged offense because he "sufficiently admitted" to the act of displaying his gun.

Appellant bases his argument on his interpretation of the term "displays" as used in Penal Code section 42.08(a)(8), the disorderly conduct provision under which he was charged. He argues that the trial court, like appellant in his trial testimony, erroneously interpreted the "displays" element as requiring the gun to be removed from the holster. He urges that this "restrictive definition" is inconsistent with the intent of the statute, and asserts that a statutory construction analysis of the statute demonstrates that his testimony about tightening his shirt and putting his hand over his gun constitutes evidence of "displaying" a weapon. He maintains on appeal that "[t]he meaning of the word 'displays' is not plain on the face of [the statute]," and suggests that there is ambiguity or absurdity in the statute and consults extra-textual sources to determine legislative

10

intent.[5] Appellant argues that "displays" as used in section 42.01(a)(8) should be broadly interpreted, and urges this Court to hold that "manifesting the presence of a gun and/or making a fraction of the gun visible" satisfies the "displays" element of the charged offense. We decline to do so because we find appellant's interpretation of the statute to be flawed.

Applying principles of statutory construction to section 42.01(a)(8), we find that its plain meaning supports the trial court's conclusion that appellant did not admit to the charged conduct in his testimony.[6] In construing a statute, we focus on the literal text of the statutory language, reading words and phrases "in context" and construing them "according to the rules of grammar and common usage." *Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1158 (2015); *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009); *see* Tex. Gov't Code § 311.011(a). To determine the plain meaning of a word, "we consult dictionary definitions, apply rules of grammar, and consider words in context." *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016) (citing *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008)).

---

[5] In attempting to argue the legislative intent, appellant refers to dictionary definitions of "displays" as well as subsequent legislation concerning a different Penal Code offense, the offense of unlawful carrying of a handgun by a license holder, which is set forth in section 46.035 of the Penal Code. *See* Tex. Penal Code § 46.035.

[6] Because appellant did not raise a constitutional due process or any other challenge to section 42.01(a)(8), we do not engage in a statutory construction analysis in the traditional sense. However, because appellant's argument before the trial court—that he was entitled to the requested jury charge instructions because he admitted to the alleged conduct in his testimony (by admitting to acts that qualify as "displaying" under the statute)—relied on his interpretation of "displays" as used in the statute, we utilize statutory construction principles to ascertain whether he admitted to the elements of the offense as required by the confession-and-avoidance doctrine. *See Boston v. State*, 410 S.W.3d 321, 325 (Tex. Crim. App. 2013) (construing robbery statute to resolve appellant's claim that evidence was insufficient because evidence showed victim did not perceive threat and perception of threat was required to prove element of "threatens" under robbery statute).

"[W]e presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible." *Id.* at 902–03 (citing *Yazdchi*, 428 S.W.3d at 837). We give effect to the plain meaning of the statute's language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended. *Id.* at 902; *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

In his analysis, appellant cites to dictionary definitions defining the verb "display" as "to exhibit to sight or mind," "to give evidence of," "manifest," and "to express by gesture or bodily posture," as well as the definition of "manifestation" as "a demonstration of the existence or presence of an object." Based on these definitions, appellant argues that a person could "display" a handgun under the statute "by manifesting or giving evidence of its presence even if the gun is not in plain sight." We disagree.

First, in our review of dictionary definitions of "display," *see Lopez*, 253 S.W.3d at 685 ("We initially consult dictionary definitions for the plain meaning of a word[.]"); *Olivas v. State*, 203 S.W.3d 341, 345–46 (Tex. Crim. App. 2006) (looking to common dictionary definitions for guidance in determining plain meaning of undefined words in Penal Code), we find that the most common definitions of the verb "display" incorporate an aspect of making an object visible, defining "display" as:

- (1) (a)   to put or spread *before the view*;
     (b)   to make evident;
     (c)   to exhibit ostentatiously;
  *see* http://www.merriam-webster.com/dictionary/display (emphasis added);

- (1)   to show or exhibit; *make visible*,
  *see* http://www.dictionary.com/browse/display (emphasis added);

12

-     (a)     to present *to view*; cause *to be seen*,
  *see* http://www.thefreedictionary.com/ display (emphasis added);

-     (1)     put (something) in a prominent place *in order that it may readily be seen*,
  *see* http://www.oxforddictionaries.com/definition/english/display (emphasis added); and

-     (1)     to put something in a particular place *so that people can see it easily*;
  *see* http://www.macmillandisctionary.com/dictionary/british/display_1 (emphasis added).

More importantly, however, appellant's attempts to interpret "display" fail to consider the term in context.[7] *See* Tex. Gov't Code § 311.011(a) (mandating that statutory words are to be "read in context"); *Ex parte Perry*, 483 S.W.3d at 902 ("In determining plain meaning, we consult dictionary definitions, apply rules of grammar, and consider words in context[.]"). "We are bound to give meaning to each phrase and word within a statute." *Dobbs v. State*, 434 S.W.3d 166, 172 (Tex. Crim. App. 2014); *see Yazdchi*, 428 S.W.3d at 837 ("[W]e must 'presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.'") (quoting *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011)); *see also Nguyen v. State*, 1 S.W.3d 694, 696 (Tex. Crim. App. 1999) ("[W]e endeavor to give effect to the whole statute, which includes each word and phrase, if possible. . . . [W]e cannot interpret a phrase [or word] within a statute in isolation[.]"); *Thomas v. State*, 919 S.W.2d 427,

---

[7] *See, e.g.*, *In re Office of the Attorney Gen. of Tex.*, 456 S.W.3d 153, 155–56 (Tex. 2015) ("[O]ne cannot divorce text from context. The meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them. Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases. The import of language, plain or not, must be drawn from the surrounding context, particularly when construing everyday words and phrases that are inordinately context-sensitive.").

430 (Tex. Crim. App. 1996) ("We always strive to give words and phrases meaning within the context of the larger provision.").

Under section 42.01(a)(8), a person commits an offense if, with the requisite mental state, he "displays a firearm or other deadly weapon" under the stated circumstances. *See* Tex. Penal Code § 42.01(a)(8). The object of the verb "displays" is "a firearm or other deadly weapon." The statute explicitly criminalizes the display of an item, specifically "a firearm or other deadly weapon." Thus, the thing that must be "displayed"—or "put before the view," "shown or exhibited," "made visible," "presented to view," "caused to be seen," or even (using appellant's definitions) "exhibited to the sight or mind," "given evidence of," or "manifested"—is the weapon itself, not the existence or presence of the weapon. Interpreting "displays" as appellant suggests is, we believe, contrary to the plain meaning of the statute reflected by its literal text. *See Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015) ("When a statute is unambiguous, the courts should not add to or subtract from it."). Had the legislature intended to criminalize the "display" of simply the existence or presence of a weapon—rather than the weapon itself—it would have so stated. *See Cornet*, 359 S.W.3d at 222 ("[W]hen the Legislature desires to convey a certain level of specificity within a statutory provision, it knows how to do it.").

Because the plain meaning of "displays" as used in Penal Code section 42.01(a)(8) requires making the weapon itself visible, not merely demonstrating the presence or existence of the weapon, the trial court did not err in finding that appellant's testimony did not constitute an admission to the alleged act that would have entitled him to the requested defensive jury charge instructions.

14

Moreover, appellant's argument addresses only the "act" component of "conduct." *See* Tex. Penal Code § 1.07(a)(10) (defining "conduct" to mean "an act or omission and its accompanying mental state"). A confession-and-avoidance defense requires the defendant to admit the elements of the charged offense—including the culpable mental state—while claiming the otherwise illegal action was justified. *Juarez*, 308 S.W.3d 404; *see Villa*, 417 S.W.3d at 462 ("As such, a defendant claiming entitlement to an instruction on [a confession-and-avoidance] defense must admit to each element of the offense, including *both* the act and the requisite mental state.") (emphasis added).

Throughout his testimony, in addition to repeatedly denying that he displayed his weapon, appellant consistently and adamantly denied any intent to display his weapon. He even rejected the possibility that he "unknowingly or unintentionally displayed [his] weapon." Yet, notwithstanding this testimony, appellant asserts in his brief that his testimony "reflected that he acted knowingly or intentionally."[8] Appellant relies on *Juarez v. State* to argue that despite his repeated denial of the requisite culpable mental state, a jury could infer that he acted intentionally or knowingly from his actions. *See Juarez*, 308 S.W.3d at 405. We find appellant's reliance on *Juarez* to be misplaced as it is distinguishable from this case. Juarez was charged with aggravated assault on a peace officer for biting a police officer.[9] The Court of Criminal Appeals noted that

---

[8] To support this assertion, appellant cites to portions of his testimony that indicate that he "tightened [his] shirt" and "was controlling [his] shirt" so it was "probably no[t]" possible that he unknowingly or unintentionally displayed his weapon.

[9] Police officers responded to a 911 call concerning three men attempting to break into cars in an apartment complex parking lot. In order to catch the suspects in the act, the officers parked their patrol cars outside the complex and approached on foot. When they encountered the three men inside and next to a car with items from the car strewn on the ground, the men ran and a chase

15

although Juarez denied biting the officer intentionally, knowingly, or recklessly, he had also admitted that he bit the officer "to get [the officer] off of him because [the officer] was causing him to suffocate." *Id.* The court concluded that although he denied acting with requisite culpable mental state in his testimony, "Juarez's mental state—that the biting was done either intentionally, knowingly, or recklessly—could have reasonably been inferred from his testimony about the circumstances surrounding his conduct." *Id.*; *see also Cornet*, 359 S.W.3d at 226–27 (discussing *Juarez* and observing "that the jury could reasonably infer from the character of his self-described conduct that he bit the officer intentionally, knowingly, or recklessly, notwithstanding the fact that he expressly denied having harbored such an intent").

In this case, the requisite culpable mental state associated with the charged act—intentionally or knowingly displaying the firearm—cannot be inferred from appellant's self-described conduct of manipulating his shirt and putting his hand over his weapon intending to demonstrate to Hill that he had the ability to defend himself. At best, appellant's testimony about his intent reflected that he engaged in his actions—which, as discussed above, do not demonstrate the display of his firearm—with the intent to communicate the presence of a weapon. However, such intent does not admit to the requisite mental state of intentionally or knowingly displaying the weapon. Moreover, in his testimony, appellant described using his shirt to conceal his gun rather

---

ensued. When the officer pursuing Juarez caught up to him, Juarez appeared to surrender. However, when the officer attempted to handcuff him, he pulled away and physically resisted. The two tussled as Juarez resisted arrest and the officer attempted to gain control over him. While pinned to the ground and allegedly fearful for his life, Juarez bit down on the officer's finger and, for a protracted period of time, refused to let go. He testified that he "just bit down to get him off of me, because I felt like I was going to die." *See Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012).

16

than lifting his shirt to expose it. He even rejected the possibility of unknowing or accidental exposure because he was "controlling" his shirt. This testimony does not constitute evidence from which a jury could infer that he intentionally or knowingly displayed his weapon because it reflects the intent to conceal instead of the intent to display. Thus, appellant's testimony—particularly his repeated denials of the intent to display his gun and his descriptions of intentional concealment—did not admit to the requisite culpable mental state.

Based on the plain meaning of the disorderly conduct provision at issue—specifically the plain meaning of "displays a firearm or other deadly weapon"—and given appellant's adamant, repeated, and consistent denials that he displayed his firearm or had any intent to display his firearm, we conclude that the trial court did not abuse its discretion by finding that the defenses of necessity and self-defense were inapplicable here because appellant did not admit to the charged conduct, as required by the confession-and-avoidance doctrine. Taken as a whole, appellant's testimony was not an admission of the alleged conduct—intentionally or knowingly displaying a firearm in a manner calculated to alarm—but was instead an attempt to negate that conduct. *See Villa*, 417 S.W.3d at 462 ("If the defensive evidence does no more than attempt to negate an element of the offense, a defendant is not entitled to a defensive instruction on any defense that is subject to the doctrine of confession and avoidance."); *Shaw*, 243 S.W.3d at 659 ("[W]ith respect to defenses such as necessity and self defense . . . when the defensive evidence merely negates the necessary culpable mental state, it will not suffice to entitle the defendant to a defensive instruction.").

17

Because appellant did not satisfy the requisites of the confession-and-avoidance doctrine, the trial court did not abuse its discretion in denying appellant's requested defensive jury charge instructions on necessity and self-defense.[10] We overrule appellant's two points of error.

## CONCLUSION

Having overruled appellant's two points of error, we affirm the trial court's order granting misdemeanor community supervision.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   August 31, 2016

Do Not Publish

_____

[10] Finding no error in the jury charge, we need not reach appellant's claim of harm. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013) ("Because there is no charge error in this case, we need not conduct a harm analysis."); *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009) ("Finding no error in the jury charge, we do not consider whether appellant was harmed.").