**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00123-CR**
_____

**THE STATE OF TEXAS, Appellant**

**V.**

**CRAIG DOYAL, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-06-07315-CR**

**OPINION**

The State of Texas appeals the trial court's dismissal of an indictment, which alleged that appellee Craig Doyal, as a member of the Montgomery County Commissioners Court, knowingly conspired to circumvent the Texas Open Meetings Act ("TOMA"). We reverse the trial court's order dismissing the indictment and remand the cause to the trial court for further proceedings consistent with this opinion.

1

Doyal, a member of the Montgomery County Commissioners Court, was indicted for knowingly conspiring to circumvent the provisions of TOMA by meeting in a number less than a quorum for the purpose of secret deliberations "by engaging in a verbal exchange concerning an issue within the jurisdiction of the Montgomery County Commissioners Court, namely, the contents of the potential structure of a November 2015 Montgomery County Road Bond[.]" *See* Tex. Gov't Code Ann. § 551.143 (West 2017). Doyal filed a motion to dismiss the indictment, asserting that section 551.143 is facially unconstitutional because it violates the free speech provisions of the First Amendment and is vague and overbroad.

Doyal[1] asserted that he, a county commissioner, and a political consultant met with representatives of a local political action committee ("PAC") to discuss placing a road bond referendum on the November 2015 ballot, and as a result of the meeting, a memorandum of understanding was produced, in which the Texas Patriots PAC promised its political support for putting a road bond proposal on the commissioners' special meeting agenda. According to Doyal, he posted the agenda for a special meeting of the Commissioners Court, and citizens praised the commissioners' work at the special meeting and thanked them for putting a road bond on the ballot. Doyal

---

[1]Doyal is the elected County Judge of Montgomery County, and not technically a commissioner. The County Judge is a member of Commissioners Court. Tex. Loc. Gov't Code Ann. § 81.001(a) (West Supp. 2017).

2

asserted that the county attorney wrote him a letter stating that the commissioners had complied with the requirements of TOMA, and voters passed the bond in the November election. Doyal alleged that the discussions between himself, the other commissioner, the consultant, and the members of the PAC were not a meeting under TOMA and were not intended to be an agreement to conspire to avoid TOMA.

In his motion to dismiss, Doyal argued that section 551.143 of the Texas Government Code burdens free speech and is subject to strict construction. According to Doyal, the statute facially "does not make sense[]" because "[m]eeting in numbers of less than a quorum does not violate a statute that requires a quorum to meet in open session." Doyal contended that because TOMA applies only to specific speech by public officials, it is a content-based penal regimen subject to review under strict scrutiny. According to Doyal's motion to dismiss, section 551.143 is constitutionally overbroad because it prohibits a substantial amount of protected speech when judged in relation to the statute's plainly legitimate sweep. Doyal further asserted that section 551.143 is vague and confusing because the terms "conspire" and "secret" are not defined, and the statute fails to explain what kind of "deliberations" are covered.

The State's response in the trial court asserted that section 551.143 is "both constitutional and enforceable." According to the State, section 551.143 is content

3

neutral because "it does not restrict speech based on specific content, but simply requires that the disclosure of the speech take place in an open forum." The State asserted that the purpose of section 551.143 is to control the effects of closed meetings, including decreased transparency, encouragement of fraud or corruption, and increased mistrust in governmental entities. In addition, although the State argued that intermediate scrutiny is the proper standard for reviewing section 551.143, the State contended that even if the strict scrutiny standard applied, section 551.143 meets that test because "it is narrowly tailored and serves a compelling state interest."

The trial court held a hearing, but heard no testimony regarding the underlying facts. Rather, Doyal's witnesses offered opinion testimony regarding their interpretations of section 551.143, the challenges it poses, and its constitutionality. The trial judge signed an order granting Doyal's motion to dismiss the indictment. No party requested the trial court to make findings of fact and conclusions of law, and none were filed. The State then filed this appeal, in which it raises two issues for our consideration: (1) the trial court erred by dismissing the indictment on the ground that section 551.143 is facially unconstitutionally vague and ambiguous, and (2) the trial court erred by dismissing the indictment on the ground that section 551.143 facially violates the First Amendment and is overbroad.

4

"Whether a statute is facially constitutional is a question of law that we review *de novo*." *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). If we determine that there is a reasonable construction which will render the statute constitutional, we must uphold the statute. *Tarlton v. State*, 93 S.W.3d 168, 175 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). We presume that a statute is valid and that the Legislature did not act unreasonably or arbitrarily. *Ex parte Lo*, 424 S.W.3d at 14-15. "The burden normally rests upon the person challenging the statute to establish its unconstitutionality." *Id*. at 15.

"The First Amendment—which prohibits laws 'abridging the freedom of speech'—limits the government's power to regulate speech based on its substantive content." *State v. Stubbs*, 502 S.W.3d 218, 224 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see* U.S. Const. amend. I. "Content-based regulations are those that distinguish favored from disfavored speech based on the idea or message expressed." *Stubbs*, 502 S.W.3d at 224. "[W]hen the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed." *Ex parte Lo*, 424 S.W.3d at 15. "Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption." *Id*. Accordingly, we apply strict scrutiny to content-based regulations.

*Id*. On the other hand, if the statute punishes conduct and not speech, we apply a rational basis level of review to determine if the statute has a rational relationship to a legitimate state purpose. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

Before a statute will be invalidated on its face as overbroad, the overbreadth must be real and substantial when "judged in relation to the statute's plainly legitimate sweep." *Id*. A statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application. *See In re Shaw*, 204 S.W.3d 9, 15 (Tex. App.—Texarkana 2006, pet. ref'd). With respect to issues of vagueness, statutes are not necessarily unconstitutionally vague merely because the words or terms employed in the statute are not specifically defined. *See Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). When a statute does not define the words used therein, we give the words their plain meaning. *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Under the void-for-vagueness doctrine, a statute will be invalidated if it fails to define the offense in such a manner as to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See State v. Holcombe*, 187 S.W.3d

6

496, 499 (Tex. Crim. App. 2006); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

"TOMA requires that meetings of governmental bodies be open to the public." *Asgeirsson v. Abbott*, 696 F.3d 454, 458 (5th Cir. 2012). Section 551.143(a) of TOMA, which makes a violation of TOMA a criminal offense, provides as follows:

> (a) A member or group of members of a governmental body commits an offense if the member or group of members knowingly conspires to circumvent this chapter by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of this chapter.

Tex. Gov't Code Ann. § 551.143(a). Chapter 551 defines the term "deliberation" as "a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body or any public business." *Id*. § 551.001(2) (West Supp. 2017). In addition, chapter 551 defines "governmental body" to include a county commissioners court. *Id*. § 551.001(3)(B). Furthermore, chapter 551 defines a "meeting" as follows:

> (A) a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action; or
>
> (B) except as otherwise provided by this subdivision, a gathering:

(i) that is conducted by the governmental body or for which the governmental body is responsible;

(ii) at which a quorum of members of the governmental body is present;

(iii) that has been called by the governmental body; and

(iv) at which the members receive information from, give information to, ask questions of, or receive questions from any third person, including an employee of the governmental body, about the public business or public policy over which the governmental body has supervision or control.

. . .

The term does not include the gathering of a quorum of a governmental body at a social function unrelated to the public business that is conducted by the body, the attendance by a quorum of a governmental body at a regional, state, or national convention or workshop, ceremonial event, or press conference, if formal action is not taken and any discussion of public business is incidental to the social function, convention, workshop, ceremonial event, or press conference.

The term includes a session of a governmental body.

*Id*. § 551.001(4). Lastly, chapter 551 defines "quorum" as "a majority of a governmental body, unless defined differently by applicable law or rule or the charter of the governmental body." *Id*. § 551.001(6).

8

In analyzing section 551.144 of TOMA,[2] the U.S. Court of Appeals for the Fifth Circuit held that "[t]ransparency is furthered by allowing the public to have access to government decisionmaking . . . . The private speech itself makes the government less transparent regardless of its message. The statute is therefore content-neutral." *Asgeirsson*, 696 F.3d at 461-62. The *Asgeirsson* court held that a regulation is not content-based merely because the applicability of the regulation depends on the content of the speech. *Id*. at 459. "A statute that appears content-based on its face may still be deemed content-neutral if it is justified without regard to the content of the speech." *Id*. at 459-60. Doyal contends that *Asgeirsson* was abrogated by *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015). He emphasizes that this Court need not follow cases from the Fifth Circuit Court of Appeals and argues that two additional U.S. Supreme Court cases "show that Section 551.143 does not pass constitutional muster even under intermediate scrutiny[,]"[3] and that *Asgeirsson*

---

[2]Section 551.144 makes calling or aiding in calling a closed meeting, closing or aiding in closing a meeting to the public, or participating in a closed meeting a criminal offense. Tex. Gov't Code Ann. § 551.144 (West 2017).

[3]Doyal argues that under *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017) and *Matal v. Tam*, 137 S.Ct. 1744 (2017), section 551.143 cannot survive even intermediate scrutiny. In those cases, the Supreme Court invalidated a law banning sex offenders from using social media and held that the First Amendment bars a law that prohibited disparaging trademarks. *Packingham*, 137 S.Ct. 1735, 1738; *Matal*, 137 S.Ct. at 1751. We reject the assertion that these cases render it impossible for section 551.143 to survive intermediate scrutiny.

dealt with section 551.144, which is "a simple, clear statute[,]" but section 551.143 is "so vague that experts call it 'gibberish' and are confused about its meaning and application."

First, we note that *Reed* does not mention or discuss *Asgeirsson*, and we reject Doyal's assertion that *Reed* abrogated *Asgeirsson*. *See Reed*, 135 S.Ct. at 2218-39. Second, in *Reed*, the issue facing the Supreme Court was the constitutionality of a town's "Sign Code" that prohibited the display of outdoor signs without a permit, but exempted numerous categories of signs from that requirement, including ideological signs, political signs, and temporary directional signs relating to a qualifying event. *Id.* at 2224-25. In *Reed*, a church and its pastor wished to advertise the time and location of its Sunday church services, which were held in a variety of different locations due to financial constraints. *Id.* at 2225. The church was twice cited for exceeding the time limits for displaying temporary directional signs, as well as its failure to include the date of the event on the signs. *Id.* The church filed suit in federal district court, arguing that the Sign Code violated its freedom of speech. *Id.* at 2226. After the District Court granted summary judgment in favor of the town, the Court of Appeals affirmed, and the Supreme Court granted certiorari. *Id.* After concluding that the town's Sign Code was clearly not content-neutral, but instead was "content based on its face[,]" the Supreme Court held that the Sign Code could

not survive strict scrutiny because the Sign Code was not narrowly tailored to further a compelling government interest. *Id*. at 2228-32.

We conclude that, unlike the circumstances in *Reed*, which involved the particular type of speech or message on signs, section 551.143 of TOMA is directed at conduct, *i.e.*, the act of conspiring to circumvent TOMA by meeting in less than a quorum for the purpose of secret deliberations in violation of TOMA. *See* Tex. Gov't Code Ann. § 551.143; *Reed*, 135 S.Ct. at 2228-32; *Asgeirsson*, 696 F.3d at 461-62. It is not the content of the deliberations that is targeted by section 551.143; rather, section 551.143 targets the act of knowingly conspiring to engage in deliberations that circumvent the requirements of TOMA. *See* Tex. Gov't Code Ann. § 551.143. "The prohibition in TOMA is applicable only to private forums and is designed to *encourage* public discussion[.]" *Asgeirsson*, 696 F.3d at 461. Therefore, we reject Doyal's contention that we must apply strict scrutiny in reviewing section 551.143.

This Court's opinion in *Ex parte Poe*, 491 S.W.3d 348 (Tex. App.—Beaumont 2016, pet. ref'd), is instructive. *In Ex parte Poe*, the appellant asserted that the disorderly conduct statute is facially unconstitutional due to its alleged vagueness and its alleged violation of his rights under the First, Second, Fifth, and Fourteenth Amendments. *Id*. at 350. The statute at issue in *Ex parte Poe* provided

11

that "'A person commits an offense if he intentionally or knowingly . . . displays a firearm or other deadly weapon in a public place in a manner calculated to alarm.'" *Id*. at 354. This Court concluded that the statute punishes conduct (displaying a firearm in a public place in a manner calculated to cause alarm) rather than protected expression, and that the statute bears a rational relationship to the State's legitimate interest in protecting its citizens from harm. *Id*. We therefore rejected Poe's argument that strict scrutiny applied, and we began by presuming that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it. *Id*. We also rejected Poe's argument that the word "alarm" was undefined and inherently subjective, and instead gave the undefined terms in the statute their plain meaning. *Id*.

In the case at bar, Doyal argues that section 551.143 is vague because the terms "conspire," "circumvent," and "secret" are not defined, and the statute does not explain what type of deliberations are covered. As was the case in *Poe*, the terms at issue have a plain meaning. "Conspire" is commonly understood to mean "to make an agreement with a group and in secret to do some act (as to commit treason or a crime or carry out a treacherous deed): plot together[.]" Webster's Third International Dictionary 485 (2002). "Circumvent" means "to overcome or avoid the intent, effect, or force of: anticipate and escape, check, or defeat by ingenuity or

12

stratagem: make inoperative or nullify the purpose or power of esp. by craft or scheme[.]" *Id.* at 410. "Secret" means "kept from knowledge or view: concealed, hidden" and "done or undertaken with evident purpose of concealment[.]" *Id.* at 2052.

Doyal asserts that because chapter 551 defines "deliberation" as a verbal exchange during a meeting between a quorum of members concerning an issue within the jurisdiction of the governmental body or any public business, yet section 551.143 refers to deliberations of less than a quorum, the statute is unconstitutionally vague. *See* Tex. Gov't Code Ann. §§ 551.001(2), 551.143. The Attorney General has opined that TOMA does not require that a governmental body's members be in each other's physical presence to constitute a quorum, and, therefore, section 551.143 applies to "members of a governmental body who gather in numbers that do not physically constitute a quorum at any one time but who, through successive gatherings, secretly discuss a public matter with a quorum of that body." Tex. Att'y Gen. Op. No. GA-0326 p. 3 (2005).[4] The Attorney General explained that the definition of "deliberations" as used in section 551.143 "is consistent with its definition in section 551.001 because 'meeting in numbers less than a quorum'

---

[4]We recognize the difficulties this language causes the State in its attempt to prove this element beyond a reasonable doubt; however, a statute that creates difficulty for the State in meeting its burden of proof is not unconstitutional.

13

describes a method of forming a quorum, and a quorum formed this way may hold deliberations like any other quorum." *Id*. at p. 4; *see Esperanza Peace & Justice Ctr. v. City of San Antonio*, 316 F. Supp.2d 433, 473, 476 (W.D. Tex. 2001). The Attorney General also opined that "[t]his construction is discernible from a plain reading of the provision." Tex. Atty's Gen. Op. No. GA-0326 p. 4. We find the Attorney General's reasoning persuasive.

We conclude that section 551.143 describes the criminal offense with sufficient specificity that ordinary people can understand what conduct is prohibited. *See Holcombe*, 187 S.W.3d at 499. The statute provides reasonable notice of the prohibited conduct. *See Holcombe*, 187 S.W.3d at 499; *see also Kolender*, 461 U.S. at 357; *see also* Tex. Gov't Code Ann. § 551.143. We conclude that the statute is reasonably related to the State's legitimate interest in assuring transparency in public proceedings. *See Asgeirsson*, 696 F.3d at 461-62. The alleged overbreadth of section 551.143 is not real and substantial when judged in relation to its plainly legitimate sweep. *See Broadrick*, 413 U.S. at 615. Doyal has not satisfied his burden to prove that the statute is unconstitutionally vague and overbroad. *See id.* We sustain the State's appellate issues, reverse the trial court's order dismissing the indictment, and remand the cause to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

                                     _____

                                           STEVE McKEITHEN
                                             Chief Justice

Submitted on January 24, 2018
Opinion Delivered February 7, 2018
Publish

Before McKeithen, C.J., Horton and Johnson, JJ.